<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

| | |
|---|---|
| WENDY CHAN,                               ) | |
|                                           ) | Civil Action |
|       Plaintiff            ) | No. 10-cv-03424 |
|                                           ) | |
|    vs.                      ) | |
|                                           ) | |
| COUNTY OF LANCASTER;                      ) | |
| DENNIS STUCKEY;                           ) | |
| SCOTT MARTIN;                             ) | |
| CRAIG LEHMAN;                             ) | |
| CHARLES E. DOUTS, JR.; and                ) | |
| ANDREA McCUE,                             ) | |
|                                           ) | |
|       Defendants           ) | |

\*   \*   \*

APPEARANCES:

       NINA B. SHAPIRO, ESQUIRE
           On behalf of Plaintiff

       CRYSTAL H. CLARK, ESQUIRE
           On behalf of Defendants

\*   \*   \*

<u>O P I N I O N</u>

JAMES KNOLL GARDNER,
United States District Judge

       This matter is before the court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint, which motion was filed by all defendants together with a memorandum of law in support on February 24, 2011.  Plaintiff's Response in Opposition to Defendants' Motion to Dismiss in Part the Amended Complaint was filed together with a memorandum of law in support on March 21, 2011.  On April 8, 2011, defendants filed their Reply Brief in Support of Defendants' Motion to Dismiss Amended Complaint, with

the court's permission.  For the reasons articulated in this Opinion, I grant in part and deny in part defendants' motion.

## SUMMARY OF DECISION

For the following reasons, I grant defendants' motion to dismiss the claims in Count I against all defendants for violation of procedural due process arising from deprivation of a constitutionally-protected property interest, and dismiss this claim with prejudice.

Next, I grant defendants' motion to dismiss the claims in Count I against all defendants for violation of procedural due process arising from deprivation of a liberty interest in reputation, for First Amendment retaliation, and for conspiracy pursuant to 42 U.S.C. § 1983, without prejudice for plaintiff to file a second amended complaint by October 17, 2011 to re-plead these claims in accordance with this Opinion.

In plaintiff's response to the motion to dismiss, she withdraws her Section 1983 claims against all defendants for substantive due process and politically-motivated wrongful termination.  Accordingly, plaintiff's second amended complaint will not include these claims.

In addition, I grant defendants' motion to dismiss the claim in Count II against defendant County of Lancaster for violation of Title VII of the Civil Rights Act of 1964 ("Title VII") based upon a hostile work environment, without prejudice

for plaintiff to file a second amended complaint by October 17, 2011 to re-plead this claim in accordance with this Opinion.

Finally, I grant defendants' motion to dismiss the claims in Count IV against all defendants for violation of the Pennsylvania Human Relations Act ("PHRA") based upon a hostile work environment, without prejudice for plaintiff to file a second amended complaint by October 17, 2011 to re-plead this claim in accordance with this Opinion.

In all other respects defendants' motion to dismiss is denied.  As a result, the following claims remain in plaintiff's Amended Complaint:

In Count I, plaintiff's claims against all defendants for violation of equal protection of laws.

In Count II, plaintiff's claim against defendant County of Lancaster for violation of Title VII based upon disparate treatment.

In Count IV, plaintiff's claim against all defendants for violation of the PHRA based upon disparate treatment.

In Count VI, plaintiff's claim against the individual defendants for false light invasion of privacy.

Additionally, the following claims remain in plaintiff's Amended Complaint because defendants did not move to dismiss them:

In Count II, plaintiff's claims against defendant County of Lancaster for violations of Title VII based upon

theories other than disparate treatment or a hostile work environment.[1]

In Count IV, plaintiff's claims against all defendants for violations of the PHRA based upon theories other than disparate treatment or a hostile work environment.[2]

In Count III, plaintiff's claim against defendant County of Lancaster for violation of the Americans With Disabilities Act.

In Count V, plaintiff's claims against the individual defendants for defamation.

### JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This court has supplemental jurisdiction over plaintiff's pendent state-law claims.  See 28 U.S.C. § 1367.

---

[1]     Count II of the Amended Complaint alleges that defendant County of Lancaster violated Title VII, but is somewhat unclear as to which specific types of Title VII claims plaintiff is pursuing.  Page 1 of plaintiff's response in opposition to the within motion indicates there are other Title VII claims which defendant County of Lancaster does not move to dismiss.  Because the County only moved to dismiss Count II to the extent plaintiff alleges violations of Title VII based on disparate treatment or a hostile work environment, I do not address in this Opinion whether plaintiff has sufficiently stated a claim for any other type of Title VII violation.  For the same reason, I have not attempted to specifically list the other Title VII claims plaintiff may be pursuing in this section.

[2]     Count IV is similarly unclear regarding what specific types of PHRA claims plaintiff may be pursuing, but page 1 of plaintiff's response also indicates that there are other PHRA claims which defendants did not move to dismiss.  Accordingly, because defendants only move to dismiss plaintiff's PHRA claims based upon disparate treatment or a hostile work environment, I do not address whether plaintiff has sufficiently stated a claim for any other type of PHRA violation or attempt to specifically list other potential PHRA claims.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims allegedly occurred in Lancaster County, Pennsylvania, which is located within this judicial district.

## PROCEDURAL HISTORY

Plaintiff initiated this action on July 13, 2010 by filing a six-count Complaint against defendants.  Defendants filed a motion to dismiss on November 16, 2010.  Pursuant to a stipulation approved by my Order dated January 12, 2011, plaintiff filed a six-count Amended Complaint on February 7, 2011.  Plaintiff's claims arise from actions allegedly taken by defendants in the context of her employment as Director of Human Resources for the County of Lancaster, as well as the circumstances of her suspension without pay and eventual termination from that position.

Count I of the Amended Complaint alleges various deprivations of plaintiff's federal constitutional rights by all defendants in violation of 42 U.S.C. § 1983.  Specifically, Count I alleges claims for deprivation of procedural due process, substantive due process, and equal protection in violation of the Fourteenth Amendment, claims for politically-motivated wrongful termination and retaliation in violation of the First Amendment, and a claim of conspiracy to violate plaintiff's federal constitutional rights.

-5-

Count II alleges a claim against defendant County of Lancaster for violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e)-2000(e)-17.  Count III alleges a claim against defendant County of Lancaster for violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101-12213.

Count IV alleges a claim against all defendants for violations of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, No. 222, §§ 1-13, as amended, 43 P.S. §§ 951-963.  Count V alleges a Pennsylvania state-law claim against defendants Stuckey, Martin, Lehman, Douts, and McCue ("the individual defendants") for defamation.  Finally, Count VI alleges a Pennsylvania state-law claim against the individual defendants for false light invasion of privacy.

On February 24, 2011 defendants filed the within motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff filed her response in opposition on March 21, 2011.  On April 8, 2011 defendants filed a reply brief with permission.  Hence this Opinion.

## **STANDARD OF REVIEW**

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 102,

2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by

Bell Atlantic Corporation v. Twombly, 550 U.S. 544,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Generally, in ruling on a motion to dismiss, the court

relies on the complaint, attached exhibits, and matters of public

record, including other judicial proceedings.  Sands v.

McCormick, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil

Procedure 9, a complaint is sufficient if it complies with

Rule 8(a)(2), which requires "a short and plain statement of the

claim showing that the pleader is entitled to relief."

Fed.R.Civ.P. 8(a)(2).  Rule 8(a)(2) "[does] not require

heightened fact pleading of specifics, but only enough facts to

state a claim to relief that is plausible on its face." Twombly,

550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[3]

In determining whether a plaintiff's complaint is

sufficient, the court must "accept all factual allegations as

true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading,

the plaintiff may be entitled to relief." Fowler, 578 F.3d

---

[3]     The Supreme Court's Opinion in Ashcroft v. Iqbal, ___ U.S. ___,
___, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that
the "facial plausibility" pleading standard set forth in Twombly applies to
all civil suits in the federal courts.  Fowler v. UPMC Shadyside,
578 F.3d 203, 210 (3d Cir. 2009).  This showing of facial plausibility then
"allows the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged," and that the plaintiff is entitled to
relief.  Fowler, 578 F.3d at 210 (quoting Iqbal, ___ U.S. at ___, 129 S.Ct.
at 1949, 173 L.Ed.2d at 884).  As the Supreme Court explained in Iqbal, "[t]he
plausibility standard is not akin to a 'probability requirement,' but it asks
for more than a sheer possibility that the defendant acted unlawfully."
Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949, 173 L.Ed.2d at 884.

at 210 (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory or 'bare-bones' allegations will [not] survive a motion to dismiss," Fowler, 578 F.3d at 210, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Phillips, 515 F.3d at 231. Nonetheless, to survive a 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." Id. (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotation omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted therein. Fowler, 578 F.3d at 210. Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded. Id. at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 211 (quoting Iqbal, __ U.S. at __, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in

the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible." Iqbal, __ U.S. at __, 129 S.Ct. at 1950-1951, 178 L.Ed.2d at 884-885 (internal quotations omitted).

A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941.

## FACTS

Based upon the well-pled averments in plaintiff's Amended Complaint, which I must accept as true under the above standard of review, the pertinent facts are as follows.

Plaintiff, Wendy Chan, is an Asian female born in Taiwan.  A naturalized citizen of the United States of America, she is a citizen of Lancaster County, Pennsylvania.  On January 5, 2009, she began working as the Director of Human Resources for defendant County of Lancaster.  She was the sole Asian administrator working for Lancaster County and the only Asian administrator in its history.  A hard-working, dedicated employee with an exemplary performance record, she was qualified and experienced for the job.[4]

Plaintiff's direct supervisor was defendant Charles Douts, Jr., the County Administrator for Lancaster County.  Douts was directly supervised by the County Commissioners: defendant

---

[4]        Amended Complaint, ¶ 6, 13-14, 17-18.

Dennis Stuckey (then Chairman of the Commissioners), defendant Scott Martin (then Vice-Chairman), and defendant Craig Lehman.

The last defendant, Andrea McCue, oversaw the support staff for the Lancaster County Commissioners' Office and the County Administrator's Office, and was also directly supervised by the Commissioners.  She was also formerly the acting Human Resources Director for Lancaster County, replacing the plaintiff.[5]

As plaintiff began work, the defendants directed her to address deficiencies in the Human Resources Department, which were exposed around September 2008 as a result of an outside audit of the Department.  Specifically, they directed plaintiff to reduce bureaucracy and waste, address confidentiality in the Department, increase direct response and communication with County employees, address unequal employment conditions, and address discriminatory treatment of employees on the basis of sex, age, disability and race/color.  At the time, the County was also a defendant in pending federal discrimination lawsuits.  Plaintiff was charged with responding to and addressing these claims.[6]

She reported to the defendants discrimination, hostility and retaliation that she discovered and observed.  Her efforts as Director included: hiring staff to educate County

---

[5]      Amended Complaint, ¶ 8-12, 14-16.

[6]      Amended Complaint, ¶ 21.

employees and department heads about discrimination and
harassment in the workplace; recommending corrective action
against employees who harassed or retaliated against other
employees for reporting discrimination; recommending a handle bar
in the handicap stall in the public restroom after a disabled
employee fell; recommending removing and reassigning the sole
female Park Ranger from a perpetuating hostile work environment;
and instituting policies, which included procedures relative to
wage and hour law, the Family Medical Leave Act, discipline and
due process.[7]

Apart from her job duties as Director of Human
Resources, plaintiff spoke out as a citizen for the public-at-
large for handicapped-accessible public restrooms in the County
Courthouse.  Plaintiff requested that a handle bar and privacy
curtain be installed in the handicapped stall of the public
restrooms, which was otherwise missing a privacy door.[8]

Plaintiff's efforts were met with resistance and
hostility.  Defendant Douts instructed the plaintiff to "back
off" from her efforts to address discrimination.  He commented to
her that she "lost credibility" for associating with employee
"trouble makers" who reported discrimination to the Department.
Plaintiff was also subjected to derogatory name-calling that
mocked her ancestry, race and color. She was commonly referred to
as "Chan Dynasty" and "Princess."[9]

---

[7]     Amended Complaint, ¶ 22-23.

[8]     Amended Complaint, ¶ 25.

[9]     Amended Complaint, ¶ 26-27.

Around July 16, 2009, seven months into the job, the defendants falsely accused plaintiff of violating the Pennsylvania Ethics Act and suspended her without pay.  The alleged ethics violations included a false accusation involving a recently contracted provider (Benecon) which had a relationship with the defendant Commissioner.[10]

Defendants published the false accusations and the plaintiff's personal, private and confidential personnel matters throughout the County offices without plaintiff's knowledge or consent.  They made statements that plaintiff was unethical, unprofessional and poorly performed her job.

Recipients of the false accusations included the support staff for the County Administrator's Office and Commissioners' Office, department heads and others in the County offices, contracted vendors and the Lancaster County community. Plaintiff denied the allegations.[11]  The published false accusations tarnished plaintiff's good name and reputation.[12]

Although plaintiff received disciplinary action, the Director of Parks was not suspended for allowing the Rangers to illegally carry guns.  The Director of Recreation and her employees were not disciplined for threatening to reveal confidential information to the press.

---

[10]     Amended Complaint, ¶ 28-29.  The Amended Complaint does not specify which of the defendant Commissioners had a relationship with Benecon.

[11]     Amended Complaint, ¶ 30-31, 34-35.

[12]     Amended Complaint, ¶ 32.

The Director of the Youth Intervention Center wrongfully denied numerous employees benefits for years and was not disciplined.  The Director of Facilities was not disciplined for defying orders to put up a curtain to comply with federal ADA laws.  The Former Acting Director of Human Resources was known throughout the County to share confidential personnel information with anyone who would listen but she was not disciplined.  All of these administrators were Caucasian.[13]

On July 24, 2009, defendants terminated plaintiff.  The Lancaster County personnel manual, Policy #005, provides that "no full time employee shall be terminated except for just cause."  Plaintiff was replaced by a white male.  Plaintiff timely filed charges of discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission.[14]

The County scheduled a grievance hearing for Friday, August 21, 2009.  Through a letter dated August 17, 2009 from her attorney, Nina B. Shapiro, Esquire, plaintiff informed the County that she objected to and would not be attending the hearing because of flaws in the grievance process.

Specifically, she was denied notice of charges against her.  She was denied discovery.  The County would not disclose its witnesses and plaintiff did not have the power to subpoena her own witnesses.  She also did not have a copy of the investigation.

---

[13]    Amended Complaint, Exhibit B.

[14]    Amended Complaint, ¶¶ 33, 39, 46, 49; Exhibit D.

The Hearing Committee was comprised of three elected County officials, who were attendees at executive meetings to discuss privileged personnel issues.  The Committee members lacked objectivity and had an interest in the outcome and knowledge of the grievance.[15]

Further, according to Lancaster County Policy #006, the Committee may not limit or interfere with the supervisory authority granted to department heads and may not limit or interfere with the powers of the County Commissioner and its elective officials.  Therefore, the Committee lacks the authority to actually act upon the grieved decisions.  The policy further states that "reversed decisions are approved by the County Solicitor", who was biased with an interest in the outcome.[16]

### DISCUSSION

Defendants move to dismiss plaintiff's § 1983 claims in Count I for deprivation of procedural due process, substantive due process, and equal protection in violation of the Fourteenth Amendment; her claims for politically-motivated wrongful termination and retaliation in violation of the First Amendment; and her claim of conspiracy to violate plaintiff's federal constitutional rights.

Defendants additionally move to dismiss plaintiff's claims in Counts II and IV for violations of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act

---

[15]    Amended Complaint, ¶ 57, Exhibits E and F.

[16]    Amended Complaint, Exhibit E.

("PHRA") to the extent these claims are based on theories of disparate treatment and hostile work environment.  Finally, defendants move to dismiss plaintiff's claim in Count VI for false light invasion of privacy.

In plaintiff's response to the motion to dismiss, she withdraws her § 1983 claims in Count I for substantive due process and politically-motivated wrongful termination.[17] Accordingly, I do not address those claims on the merits and consider them withdrawn.

### Section 1983 Claims

Plaintiffs' constitutional claims in Count I are actionable against defendants through 42 U.S.C. § 1983.  Section 1983 is an enabling statute that does not create any substantive rights, but provides a remedy for the violation of federal constitutional or statutory rights.  Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000).

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Thus, to state a claim under § 1983, a plaintiff must

---

[17]   See Plaintiff's Response in Opposition to Defendants' Motion to Dismiss in Part the Amended Complaint at 1.

allege that defendant, acting under color of state law, deprived plaintiff of a federal constitutional or statutory right. Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008)(quoting Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)).

A defendant acts under color of state law when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40, 49 (1988); Bonenberger v. Plymouth Township, 132 F.3d 20, 23 (3d Cir. 1997).

Plaintiff alleges, and defendants do not dispute, that defendants' conduct was committed under color of state law.[18]

## A. *Procedural Due Process*

The defendants move to dismiss plaintiff's claim for deprivation of procedural due process.

To state a Section 1983 claim for deprivation of procedural due process, plaintiff must allege that: (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty or property; and (2) the procedures available did not provide due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).

Plaintiff contends that defendants deprived her of a constitutionally-protected property interest in her job and a liberty interest in her reputation. Plaintiff further contends

---

[18]     Amended Complaint, ¶ 48.

that the procedures available fell short of due process of law
because she was denied opportunity for a full, fair and objective
name clearing hearing.

1. *Property Interest*

Plaintiff alleges that she held a constitutionally-
protected property interest in her job as Director of Human
Resources for the County of Lancaster.  Defendants contend that
plaintiff was an "at-will" employee and therefore held no
constitutionally-protected property interest in her job.

We look to state law to determine whether a property
interest exists.  Kelly v. Borough of Sayreville, 107 F.3d 1073,
1077 (3d Cir. 1997).  "To have a property interest in a job,
however, a person must have more than a unilateral expectation of
continued employment; rather, she must have a legitimate
entitlement to such continued employment."  Elmore v. Cleary,
399 F.3d 279, 282 (3d Cir. 2005)(citing Board of Regents of State
Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709,
33 L.Ed.2d 548, 561 (1972)).  An at-will employee does not have a
legitimate entitlement to continued employment.  Elmore, 399 F.3d
at 282 (citing Chabal v. Reagan, 841 F.2d 1216, 1223 (3d Cir.
1988)).

In Pennsylvania, a "public employee takes his job
subject to the possibility of summary removal by the employing
authority.  He is essentially an employee-at-will."  Scott v.
Philadelphia Parking Authority, 402 Pa. 151, 154, 166 A.2d 278,

-17-

280 (1960).  Tenure does not attach to public employment absent

an express grant of tenured status by the state legislature.

<u>See id.</u> at 155.

Plaintiff argues that Policy #005 in her Lancaster

County personnel manual, which reads that "no full time employee

shall be terminated except for just cause,"[19] makes her

employment not merely at will, giving her a legitimate

entitlement to continued employment and a protectable property

interest in her job.  She contends that this Lancaster County

Policy was enacted by county ordinance, which makes it comparable

to state legislation granting employees a status above at-will

employment.

The United States Court of Appeals for the Third

Circuit held, however, that "Pennsylvania law precludes local

governments from employing workers on any term other than as an

at-will employee unless explicit enabling legislation to the

contrary is enacted by the Pennsylvania General Assembly."

<u>Miller v. Clinton County</u>, 544 F.3d 542, 552 (3d Cir. 2008).  In

<u>Elmore</u>, the Third Circuit held that an employee handbook stating

that employees could only be fired for "just cause" was

insufficient to overcome the at-will presumption unless there was

legislative authority for the township to grant tenure status.

<u>Elmore</u>, 399 F.3d at 282 (<u>citing</u> <u>Stumpp v. Stroudsburg Municipal</u>

<u>Authority</u>, 540 Pa. 391, 394, 658 A.2d 333, 334 (1995)).

---

[19]     Amended Complaint, ¶ 49; Exhibit D.

Although plaintiff suggests that the county ordinance enacting Policy #005 is comparable to state legislative action, it has been held by at least one district court in this circuit that "Pennsylvania County governments do not have the authority to confer tenured status through the issuance of personnel manuals." Holocheck v. Luzerne County Head Start, Inc., 385 F.Supp.2d 491, 500 (M.D.Pa. Aug 30, 2005)(Vanaskie, C.J.). Furthermore, plaintiff points to no express state legislation which gives Lancaster County the ability to grant tenure to its employees and to overcome the at-will presumption for public employees in Pennsylvania.

Therefore, I conclude that Lancaster County did not have the authority to make plaintiff more than an at-will employee through its personnel manual. Accordingly, plaintiff had no constitutionally-protected property interest in her job as Director of Human Resources.

### 2. *Liberty Interest*

Plaintiff also contends that she has a liberty interest in her reputation, and that defendants deprived her of this interest though the alleged false accusations and loss of her job. I agree with plaintiff that a constitutionally-protected liberty interest in reputation is implicated here.

An individual has a protectable interest in reputation. Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515, 519 (1971). But reputation alone is not

protected by the Due Process Clause.  <u>Dee v. Borough of Dunmore</u>,
549 F.3d 225, 233 (3d Cir. 2008)(<u>citing</u> <u>Clark v. Township of
Falls</u>, 890 F.2d 611, 619 (3d Cir. 1993)).

     Rather, to make out a due process claim for deprivation
of a liberty interest in reputation, "a plaintiff must show a
stigma to his reputation plus deprivation of some additional
right or interest."  <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225,
236 (3d Cir. 2006)(<u>citing</u> <u>Paul v. Davis</u>, 424 U.S. 693, 701,
96 S.Ct. 1155, 1160-1161, 47 L.Ed.2d 405, 414 (1976)).

     In the public employment context, the "stigma-plus"
test has been applied to mean that when an employer creates and
disseminates a false and defamatory impression about the employee
in connection with his termination, it deprives the employee of a
protected liberty interest.  <u>Hill</u>, 455 F.3d at 236 (<u>citing</u> <u>Codd
v. Velger</u>, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92,
97 (1977)).  The creation and dissemination of a false and
defamatory impression is the "stigma", and the termination is the
"plus".  <u>Hill</u>, 455 F.3d at 236.

     To satisfy the "stigma" prong of the test, a plaintiff
must allege that the allegedly stigmatizing statements (1) were
made publicly and (2) were false.  <u>Id.</u>  A plaintiff needs to
allege "harm that forecloses future opportunities."  <u>Baraka v.
McGreevey</u>, 481 F.3d 187, 209 n.17 (3d Cir. 2007).

     Defendants contend that plaintiff has not satisfied the
"plus" prong of the "stigma-plus" test because she was not

deprived of an additional right or interest protected by the Constitution (such as a property interest in her employment, which I have concluded plaintiff did not have here).

However, the Third Circuit expressly held in <u>Hill</u> that "a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost."  <u>Hill</u>, 455 F.3d at 236. Therefore, the "plus" prong of the test is satisfied even where the plaintiff is, as I have concluded above, an at-will employee who did not have a constitutionally-protected property interest in the job she lost.  <u>See</u> <u>id.</u> at 239.

Defendants additionally contend that plaintiff has only made conclusory statements that she suffered harm which foreclosed future opportunities.  However, under the requirements of <u>Hill</u> and <u>Baraka</u>, I conclude that plaintiff has sufficiently alleged that she was deprived of a protected liberty interest in her reputation.

Here, plaintiff has alleged that the defendants' accusations relating to violations of the Pennsylvania Ethics Act were false, and that the accusations were published, not only to the County offices but to contracted vendors and the Lancaster community.[20]  She has alleged that she was terminated from her position in connection with the accusations, and that the false

_____

[20]     Amended Complaint, ¶ 31.

accusations tarnished her good name and reputation.[21]  Plaintiff additionally alleges that she suffered financial losses, lost income, and "lost career" as a result of the defendants' actions.[22]

Accepting these allegations as true, and construing them in the light most favorable to the plaintiff, as I am required to do under the forgoing standard of review, I conclude that plaintiff has stated a plausible claim that she was deprived of her liberty interest in reputation.  See Fowler, 578 F.3d at 210; Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.

### 3. *Adequacy of Process*

Because I have concluded that plaintiff has sufficiently alleged that she was deprived of a liberty interest in reputation protected under the Fourteenth Amendment, I must now address whether the procedure available to the plaintiff comported with due process of law.  See Alvin, 227 F.3d at 116.

"Due process is flexible and calls for such procedural protections as the particular situation demands."  Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 33 (1976)(quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972)).  In order to determine what process was owed, there are three factors to be measured:

---

[21]     Amended Complaint, ¶¶ 32-33.

[22]     Amended Complaint, ¶ 44.

> First, the private interest that will be affected
> by the official action; second, the risk of an
> erroneous deprivation of such interest through the
> procedures used, and the probable value, if any of
> additional or substitute procedural safeguards;
> and finally, the Government's interest, including
> the function involved and the fiscal and
> administrative burdens that the additional or
> substitute procedural requirement would entail.

Mathews, 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.

At a minimum, due process requires notice and a

hearing. Wilson v. MVM, Inc., 475 F.3d 166, 178 (3d Cir. 2007).

Adequate due process requires the opportunity to be

heard "at a meaningful time and in a meaningful manner."

Mathews, 424 U.S. at 333, 96 S.Ct. at 902, 47 L.Ed.2d at 32.

A state cannot be held to have violated due process requirements

when it has made procedural protection available and "the

plaintiff has simply refused to avail himself of them." Alvin,

227 F.3d at 116 (citing Dusanek v. Hannon, 677 F.2d 538, 543

(7th Cir. 1982)).  In order to state a claim for failure to

provide due process, a plaintiff must have taken advantage of the

processes that are available to him or her, unless those

processes are unavailable or patently inadequate. Id.

When a deprivation of a liberty interest in reputation

occurs, the employee is entitled to process in the form of a

name-clearing hearing. Hill v. Borough of Kutztown,

455 F.3d 225, 236 (3d Cir. 2006).  "A federal constitutional

claim arises not from the defamatory or stigmatization conduct

per se but from the request and denial of a name-clearing

hearing." <u>Morgenstern v. Pennsylvania Convention Center Authority</u>, 2008 U.S.Dist.LEXIS 92989, at *20 (E.D.Pa. Oct. 31, 2008) (O'Neill, J.).

Defendants contend that plaintiff was not denied appropriate procedural due process. Rather, there was, according to County procedure, a grievance hearing scheduled for Friday, August 21st, 2009, and plaintiff declined to attend.[23] Thus, defendants argue that plaintiff did not avail herself of the process they provided.

Plaintiff does not contest that a hearing was available to her, but instead challenges its adequacy. Plaintiff alleges she was "denied notice of charges against her and denied opportunity for full, fair and objective name-clearing hearing."[24]

In a letter dated August 17, 2009, addressed to defendant Douts, plaintiff's attorney, Nina B. Shapiro, Esquire, outlined the ways in which plaintiff considered the grievance hearing to be insufficient.[25] Ms. Chan was denied discovery and had no power to subpoena her own witnesses.[26] The Hearing Committee, comprised of three elected officials, attended executive meetings to discuss privileged personnel issues, and

---

[23]    Amended Complaint, Exhibit E.

[24]    Amended Complaint, ¶ 57.

[25]    Amended Complaint, Exhibit E.

[26]    <u>Id.</u>

"have an interest in the outcome and 'knowledge of the grievance.'"[27]

The County would not disclose their witnesses or provide a copy of the investigation, leaving her at a "prejudicial disadvantage."[28]  Further, plaintiff and her counsel interpreted Policy #006 in the County personnel manual as providing the Committee with no real authority to act on the grievance.[29]

Plaintiff gave prompt notice to the County that she believed the procedures were inadequate and biased, and that she would not be attending.[30]

Taking all these facts as true, and reading them in a light most favorable to plaintiff, I conclude that plaintiff has nevertheless insufficiently alleged that the process available to her was patently inadequate and denied her the opportunity to be heard "in a meaningful manner."  Mathews, 424 U.S. at 333.

Plaintiff's allegation that the Hearing Committee was insufficient based on their having prior knowledge of the grievance and "interest in the outcome," is not enough to establish inadequacy of process.  According to the United States Court of Appeals for the Fourth Circuit:

---

[27]     Id.

[28]     Id.

[29]     Id.

[30]     Id.

> [G]overnmental officials conducting such hearings
> will often be employed by the same governmental
> entity that made the decision being challenged,
> and those officials are still presumed to be fair
> and impartial in conducting proceedings.  This
> presumption of impartiality applies even if the
> official is not only employed by the governmental
> entity, but was directly involved in the
> investigation.

Harrell v. City of Gastonia, 392 Fed.Appx. 197, 205 (4th Cir. 2010).

Therefore, the fact that the Committee would be made up of government employees, who may already be aware of the allegations, is not unusual and does not itself make the process inadequate.

Limits on discovery also do not violate the Due Process Clause.  Bogardus v. Maloney, 2004 U.S.Dist.LEXIS 18934, at *10 (E.D.Pa. Sept. 16, 2004)(Sanchez, J.)(citing Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 520 (10th Cir. 1998)).

The Third Circuit has held that a lack of subpoena power did not deny due process.  DeLong v. Hampton, 422 F.2d 21, 25 (3d Cir. 1970).  Relying on DeLong, the Bogardus court held that the lack of compulsory process did not deprive the plaintiff of an opportunity to clear her name at the grievance hearing. Bogardus, 2004 U.S.Dist.LEXIS 18934 at *11 (citing DeLong, 422 F.2d at 25)).

A name-clearing hearing "need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid."  Chilingirian v. Boris, 882 F.2d 200, 206 (6th Cir. 1989)(citing Baden v. Koch, 799 F.2d 825, 830-833 (2d Cir. 1986)).

Plaintiff further avers that the grievance hearing was insufficient because she was denied a copy of the investigation or disclosure of the County's witnesses.  Plaintiff has not cited any authority suggesting that the release of such information is compulsory in a name-clearing hearing.  But the Sixth Circuit in Gregory v. Hunt, 24 F.3d 781, 789 (6th Cir. 1994), held that process was adequate in a name-clearing hearing where, among other things, "evidence was introduced to [plaintiff's] detriment for the first time at the hearing, but he was afforded an opportunity to respond at that time."

Plaintiff's assertion that she was denied due process because the Committee may have lacked the power to act upon her grievance is also without merit.  Name-clearing hearings do not address the correctness of a particular course of action.  Lyons v. Barrett, 851 F.2d 406, 411 (D.C. Cir. 1988).  They simply permit a dismissed employee to "clear his name."  Id. (citing Codd v. Velger, 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92, 96 (1977)).

"The process due...is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee."  Rosenstein v. Dallas, 876 F.2d 392, 395 (5th Cir. 1989)(citing Roth, 408 U.S. at 573 n.12, 92 S.Ct. at 2707 n.12, 33 L.Ed.2d at 558 n.12)).

In summary, I conclude that plaintiff has not stated a plausible claim for violation of procedural due process.  Because I conclude that, as a matter of law, plaintiff did not have a

constitutionally-protected property interest in her employment, I dismiss plaintiff's procedural due process claim with prejudice to the extent her claim is based on deprivation of a property interest.

I further conclude that plaintiff has sufficiently alleged the deprivation of a constitutionally-protected liberty interest in her reputation.  See Alvin, 227 F.3d at 116. Nevertheless, I conclude that the facts as alleged by plaintiff, taken as true, fail to establish that the procedure available to her was patently inadequate and thus may not have provided her with due process of law.

Therefore, I dismiss plaintiff's procedural due process claim for deprivation of her liberty interest in reputation, without prejudice to re-plead, if appropriate, to allege additional facts supporting a conclusion that the grievance hearing available to plaintiff was patently inadequate.

B. *First Amendment Retaliation*

To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action.  Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir. 2009).

> A public employee's statement is protected
> activity when (1) in making it, the employee spoke
> as a citizen, (2) the statement involved a matter
> of public concern, and (3) the government employer
> did not have an adequate justification for
> treating the employee differently from any other

member of the general public as a result of the
statement he made.

Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006).

An employee does not speak as a citizen when he makes a statement pursuant to his "official duties".  Gorum, 561 F.3d at 185 (quoting Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S.Ct. 1951, 1960, 164 L.Ed.2d 689, 701 (2006)).

Defendants contend that plaintiff has not sufficiently alleged that she engaged in protected speech as a citizen which was a substantial factor in the alleged retaliation.

In the Amended Complaint, plaintiff alleges that defendants "retaliate[d] against the plaintiff for reporting and acting to remedy discrimination on the basis of sex, disability, and race, [and] for disclosing illegal activities[.]"[31]  She reported "blatant discrimination, hostility and retaliation that she disclosed, discovered and/or observed."[32]

However, plaintiff also alleges that defendants, her direct supervisors, directed her, in her position as Director of Human Resources, to "address unequal employment conditions for employees, and address discrimination, harassment, disparate and different treatment of employees on the basis of sex, age, disability and race/color."[33]

I conclude that in general, plaintiff has not alleged that her actions were taken outside of her official duties as

---

[31]     Amended Complaint, ¶ 40.

[32]     Amended Complaint, ¶ 22.

[33]     Amended Complaint, ¶ 21.

Director of Human Resources.  Plaintiff has not alleged that
these activities were done on her own time, or that she
communicated through any outside channels that would suggest she
was speaking as a private citizen.

However, plaintiff contends that she alleged she was
speaking as a citizen when, in paragraph 25 of her Amended
Complaint, she averred:

> Apart from her job duties as director of human
> resources for the employees, Plaintiff spoke out
> as a citizen for the public-at-large for
> handicapped accessible public restrooms in the
> County Courthouse.  Plaintiff requested that a
> handle bar and privacy curtain be installed in the
> handicapped stall of the public restrooms
> (otherwise missing a privacy door).

As to this statement, plaintiff has sufficiently
alleged that she was speaking as a citizen, apart from her
official duties.  See Gorum, 561 F.3d at 185.

The second prong of the protected activity test is that
the plaintiff must have spoken on a matter of public concern.
Hill, 455 F.3d at 241.  In Hill, the Third Circuit suggests that
at the motion to dismiss stage, it is inappropriate to determine
if the speech was a matter of public concern.  Rather, that
determination should be made upon examination of "the content,
form, and context of the statement, as revealed by the whole
record."  Id. at 242-243 (quoting Rankin v. McPherson,
483 U.S. 378, 385, 107 S.Ct. 2891, 2897, 97 L.Ed.2d 315, 324-325
(1987)).

Similarly, Hill counsels that it is inappropriate at
this stage to resolve the third prong of the protected activity

test: whether the employer has adequate justification for treating the employee differently from any other member of the general public.  Hill, 455 F.3d at 243.  Plaintiff has therefore sufficiently alleged that she engaged in protected activity for purposes of this motion to dismiss.

In addition to alleging protected activity, a plaintiff must also allege that the protected activity was a substantial factor in the alleged retaliatory action.  Gorum, 561 F.3d at 184.  To establish that the activity was a substantial factor, a plaintiff usually must prove

> (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  In the absence of that proof, the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of fact should infer causation.

Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

See also Bowser v. Bogdanovic, 2010 U.S.Dist.LEXIS 35080, at *17 (M.D.Pa. Apr. 9, 2010)(Jones, J.), in which a First Amendment retaliation claim was dismissed for failure to allege sufficient facts to show a "causal connection between that activity and the adverse employment actions [plaintiff] has alleged."

Plaintiff has set forth no facts to suggest that the timing of her request for the improvements in the courthouse restrooms was paired with the timing of the alleged retaliation. She has not even alleged the date the request was made.

Therefore, it is impossible to determine whether the alleged retaliatory acts occurred within the requisite temporal proximity to the protected activity, or whether the timing establishes the necessary causal link.  Even reading the Amended Complaint in a light most favorable to plaintiff, there are no facts from which I may conclude that her request to improve the bathrooms at the courthouse was a substantial factor in the alleged retaliation.

Accordingly, I grant the defendants' motion to dismiss plaintiff's claim for First Amendment retaliation, without prejudice for plaintiff to re-plead to provide more specific allegations as to the timing of her statements about the public restrooms in the County courthouse.

C. *Equal Protection*

Defendants move to dismiss plaintiff's claim for denial of equal protection.  Under the facts alleged, I conclude that plaintiff has sufficiently stated an equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  To assert a claim for equal protection as a member of a protected class, a plaintiff must allege that (1) he or she is a member of a protected class and (2) he or she received different treatment than that received by other similarly situated individuals.  Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992).

To avoid dismissal, a plaintiff must allege both protected-class status and differential treatment of similarly

-32-

situated non-class members.  D'Altilio v. Dover Township,
2007 U.S.Dist.LEXIS 71414, at *26 (M.D.Pa. Sept. 26, 2007)
(Conner, J.)(citing Keenan, 983 F.2d at 465).  Plaintiff has
alleged she has protected-class status as an Asian female born in
Taiwan.[34]

　　　　Defendant contends that plaintiff has not alleged that
similarly situated employees were treated differently.  Persons
are similarly situated under the Equal Protection Clause when
they are alike "in all relevant aspects."  Startzell v. City of
Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008)(citing Nordlinger
v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1, 12
(1992)).

　　　　To be alike in all relevant aspects does not mean they
must be *identically* situated.  George v. Wilbur Chocolate Co.,
2010 U.S.Dist.LEXIS 41932, at *14 (E.D.Pa. Apr. 28, 2010)
(Golden, J.)(emphasis added).

　　　　Plaintiff is not required to identify in the Complaint
specific instances where others have been treated differently.
Tomino v. City of Bethlehem, 2010 U.S.Dist.LEXIS 32221, at *36
(E.D.Pa. Mar. 31, 2010)(Gardner, J.)(citing Phillips v. County of
Allegheny, 515 F.3d 224, 245 (3d Cir. 2008)).  Rather, a general
allegation that plaintiff has been treated differently from
others similarly situated will suffice.  Tomino,
2010 U.S.Dist.LEXIS 32221, at *36.

---

[34]　　　Amended Complaint, ¶ 13.

Plaintiff contends that she has stated a claim by alleging that other Directors within Lancaster County were not reprimanded for ethical violations.  The defendants contend that none of these people are similarly situated to plaintiff because they have not been accused of the same conduct, that is, violations of the Pennsylvania Ethics Act.

The individuals plaintiff alleges to have been treated differently despite being similarly situated are described in a letter from her to defendant Douts, written July 21, 2009 and attached to the Amended Complaint as Exhibit B:

> The Director of Parks was not suspended for allowing the Rangers to illegally carry guns.  The Director of Recreation and her employees were not disciplined for threatening to reveal confidential information to the press.  The Director of the Youth Intervention Center wrongfully denied numerous employees benefits for years and was not disciplined.  The Director of Facilities was not disciplined for defying your orders to put up a curtain to comply with federal ADA laws.  The Former Acting Director of HR was known throughout the County to share confidential personnel information to "anyone that would listen" but she was not disciplined.  Significantly, all of the above referenced administrators are Caucasian (race white).

Read in a light most favorable to plaintiff, I conclude that she has sufficiently alleged that similarly situated individuals outside the protected class were treated differently. Plaintiff has alleged that Caucasians holding director-level positions, including a prior Director of Human Resources, the position plaintiff held for Lancaster County, were not disciplined despite activities that suggest ethical violations.

The alleged activities need not be precisely identical. See George, 2010 U.S.Dist.LEXIS 41932 at *14.  Moreover, plaintiff exceeds the required level of specificity by identifying specific instances where these individuals were allegedly treated differently.  See Tomino, 2010 U.S.Dist.LEXIS 32221 at *36.

Determining whether an individual is "similarly situated" to another individual is a case-by-case fact-intensive inquiry.  Monaco v. American General Assurance Co., 359 F.3d 296, 305 (3d Cir. 2004).  This court has previously suggested that a final determination of this issue is inappropriate at the motion-to-dismiss stage.[35]

At this stage of the litigation, and accepting plaintiff's facts as true, her allegations that similarly situated individuals were treated differently are sufficient. Accordingly, I deny defendants' motion to dismiss plaintiff's equal protection claim.

### D. *Conspiracy*

Defendants move to dismiss plaintiff's claim that they conspired to violate her constitutional rights under § 1983.  I

---

[35]     See DeJohn v. Temple University, 2006 U.S.Dist.LEXIS 64911, at *9-10 (E.D.Pa. Sept. 11, 2006)(Dalzell, J.), which noted that "[s]ince the question of differential treatment necessarily requires a detailed examination of both [plaintiff's] situation and that of his fellow students, it is poorly suited to resolution on a motion to dismiss."

See also Heneghan v. Northampton Community College, 2010 U.S.Dist.LEXIS 68254, at *21 (E.D.Pa.  July 7, 2010)(Stengel, J.), which noted that "[w]hile these factual allegations certainly do not establish that [plaintiff was treated] differently than other females similarly situated, it is plausible that discovery could reveal the existence of evidence in support of this fact."

agree with defendants that on the facts alleged, plaintiff has
failed to state a claim for conspiracy.

In order to state a claim for conspiracy pursuant to
Section 1983, the Amended Complaint must allege (1) the existence
of a conspiracy involving state action; and (2) a deprivation of
civil rights in furtherance of the conspiracy by a party to the
conspiracy.  Piskanin v. Hammer, 2005 U.S.Dist.LEXIS 28135,
at *11 (E.D.Pa, Nov. 14, 2005)(Padova, J.)(quoting Marchese v.
Umstead, 110 F.Supp.2d 361, 371 (E.D.Pa. 2000)(Reed, S.J.)).

The rule is clear that allegations of a conspiracy must
provide some factual basis to support the existence of the
elements of a conspiracy: agreement and concerted action.
Capogrosso v. Supreme Court. of New Jersey, 588 F.3d 180, 185
(3d Cir. 2009)(quoting Crabtree v. Muchmore, 904 F.2d 1475,
1480-1481 (10th Cir. 1990)).  The pleadings must show "that two
or more conspirators reached an agreement to deprive [plaintiff]
of a constitutional right under color of law."  Parkway Garage,
Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993).

Defendants contend, and I agree, that plaintiff has put
forth only conclusory allegations of conspiracy, with no factual
basis in the Amended Complaint.  Plaintiff has alleged that the
defendants acted "jointly and separately" in violating her
rights.[36]  Plaintiff has also alleged that defendants "acted in
concert to harm the plaintiff and remove her from employment with

---

[36]     Amended Complaint, ¶¶ 36-37, 40-42, 44.

Lancaster County,"[37] and "together acted to conspire and violate plaintiff's civil, liberty, and property rights...."[38]  These are insufficient under the pleading standards set forth by <u>Twombly</u> and <u>Iqbal</u>.

Plaintiff has not alleged any specific facts which support a conclusion that "two or more conspirators reached an agreement to deprive [her] of a constitutional right under color of law." <u>Parkway</u>, 5 F.3d at 700.  Accordingly, I dismiss the conspiracy claim, without prejudice for plaintiff to re-plead to allege specific facts which support a finding of conspiracy.

### Title VII and PHRA Claims

Count II of plaintiff's Amended Complaint asserts a federal cause of action pursuant to Title VII of the Civil Rights Act of 1964.[39]  Count IV asserts a state-law cause of action pursuant to the Pennsylvania Human Relations Act (PHRA).[40]  Defendants move to dismiss plaintiff's claims for violations of these statutes to the extent they are based on theories of disparate treatment and hostile work environment.

Title VII provides, in relevant part:

(a) Employer Practices

It shall be an unlawful employment practice for an employer-

---

[37]    Amended Complaint, ¶ 54.

[38]    Amended Complaint, ¶ 58.

[39]    42 U.S.C. §§ 2000e - 2000e-17.

[40]    Act of October 27, 1955, P.L. 744, No. 222, §§ 1-13, as amended, 43 P.S. §§ 951-963.

> (1) to fail or refuse to hire or to
> discharge any individual, or otherwise
> to discriminate against any individual
> with respect to his compensation, terms,
> conditions, or privileges of employment,
> because of such individuals's race,
> color, religion, sex or national origin;
> or
>
> (2) to limit, segregate, or classify his
> employees or applicants for employment
> in any way which would deprive or tend
> to deprive any individual of employment
> opportunities or otherwise adversely
> affect his status as an employee,
> because of such individual's race,
> color, religion, sex, or national
> origin.

42 U.S.C. § 2000e-2(a).

A plaintiff may also establish that

an employer violated Title VII by proving the existence of a

hostile work environment.  <u>Huston v. P&G Paper Products Corp.</u>,

568 F.3d 100, 104 (3d Cir. 2009).

The PHRA provides, in relevant part:

> It shall be an unlawful discriminatory practice,
> unless based upon a bona fide occupational
> qualification,....:
>
> (a)  For any employer because of the race, color,
>      religious creed, ancestry, age, sex, national
>      origin or non-job related handicap or
>      disability...to refuse to hire or
>      employ...such individual..., or to otherwise
>      discriminate against such individual...with
>      respect to compensation, hire, tenure, terms,
>      conditions or privileges of employment or
>      contract, if the individual or independent
>      contractor is best able and most competent to
>      perform the services required.

Act of October 27, 1955, P.L. 744, No. 222, §§ 1-13, as amended,

43 P.S. § 955(a).

"The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." Huston, 568 F.3d at 104 n.2 (quoting Weston v. Pennsylvania, 251 F.3d 420, 426 n.3 (3d Cir.2001)). Accordingly, I address plaintiff's Title VII and PHRA claims collectively.[41]

Claims brought pursuant to Title VII and the PHRA alleging, but having no direct evidence of, disparate treatment are traditionally analyzed under the three-step analysis set forth under the line of cases decided by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S.Ct. 1817, 1824-1825, 36 L.Ed.2d 668, 677-679 (1973).

Under McDonnell Douglas and its progeny, a plaintiff must initially establish a prima facie case of discrimination. Upon a prima facie showing, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. After defendant has met its burden of production, the burden shifts back to plaintiff to demonstrate that defendant's articulated reason was not the actual reason, but rather a pretext for discrimination. Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998); Waldron v. SL Industries, Inc., 56 F.3d 491, 494 (3d Cir. 1995).

---

[41]    Although I address these claims collectively, I note that plaintiff's Title VII claim in Count II is appropriately brought only against defendant County of Lancaster, as Title VII does not provide for individual liability.  See Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996).

To establish a prima facie case in a discrimination action such as this, a plaintiff must show that he: (1) is a member of a protected class; (2) is qualified for the position; and (3) suffered an adverse employment decision; (4) under circumstances that give rise to an inference of unlawful discrimination.  Waldron, 56 F.3d at 494.

### A. *Disparate Treatment*

A disparate treatment violation is made out when "an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII."  EEOC v. Metal Service Co., 892 F.2d 341, 347 (3d Cir. 1990).

Defendants move to dismiss plaintiff's disparate treatment claims on the same basis they sought to dismiss her § 1983 equal protection claim, specifically, her failure to allege the existence of similarly situated individuals.

However, as discussed above, I have determined that plaintiff has adequately alleged the existence of similarly situated individuals who received different treatment for purposes of this 12(b)(6) motion.[42]  Therefore, I deny the motion

---

[42]    A § 1983 equal protection claim requires the same elements of proof as a Title VII action.  Boddie v. Pennsylvania, 2010 U.S.Dist.LEXIS 130998, at *27 (M.D.Pa. Oct. 25, 2010)(Prince, M.J.) (citing Lewis v. University of Pittsburgh, 725 F.2d 910, 915 n.5 (3d Cir. 1983)).

"The showing that a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983."  Smith v. City of Salem, 378 F.3d 566, 577 (6th Cir. 2004).  An analysis of the existence of similarly situated individuals is therefore the same for equal protection and Title VII claims.

to dismiss the claims under Title VII and the PHRA based upon disparate treatment.

B. *Hostile Work Environment*

Defendants move to dismiss the claims under Title VII and the PHRA based upon hostile work environment, contending that plaintiff fails to allege behavior sufficiently severe or pervasive to state a claim.  For the following reasons, I agree with defendants.

To establish a prima facie case of hostile work environment under Title VII, a plaintiff must prove that: (1) she suffered intentional discrimination because of her protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present.  Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006).

Defendants contend that plaintiff has not alleged conduct to satisfy the second prong: that the discrimination was severe or pervasive.  Courts must consider the totality of the circumstances when determining whether discrimination was severe or pervasive.  This includes "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88,

-41-

118 S.Ct. 2275, 2283, 141 L.Ed.2d 662, 676 (1998)(quoting Harris
v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 371,
126 L.Ed.2d 295, 302-303 (1993)).

Title VII is violated when the workplace is permeated
with "discriminatory intimidation, ridicule, and insult."
Harris, 510 U.S. at 21, 114 S.Ct. at 371, 126 L.Ed.2d at 302-303.
Utterance of an "epithet which engenders offensive feelings in a
employee does not sufficiently affect the conditions of
employment to implicate Title VII."   Id.

The number of incidents of harassment is but one factor
to be considered in the totality of the circumstances.  "A Title
VII plaintiff does not prove racial harassment or the existence
of a hostile working environment by alleging some 'magic'
threshold number of incidents."  West v. Philadelphia Electric.
Co., 45 F.3d 744, 757 (3d Cir. 1995)(quoting Daniels v. Essex
Group, Inc., 937 F.2d 1264, 1275 (7th Cir. 1991)).

Plaintiff alleges that she was "commonly referred to as
'Chan Dynasty' and 'Princess.'"[43]  Defendant Douts told the
plaintiff that she "lost credibility" for associating with
employee "trouble makers" who reported discrimination, and that
she should "back off" from her efforts.[44]  She has also alleged
that defendants spread false accusations about ethical
violations, thus contributing to her hostile work environment.

---

[43]     Amended Complaint, ¶ 27.

[44]     Amended Complaint, ¶ 26.

Decisions of this court have provided some guidance as to what circumstances would and would not survive a motion to dismiss.  In <u>Pettway v. City of Philadelphia</u>, 2011 U.S.Dist.LEXIS 80869, at *10 (E.D.Pa. July, 20, 2011) (Rice, M.J.), the court held that three isolated incidents over a one-year period were not sufficient to state a hostile work environment claim.

By contrast, in <u>Petril v. Cheyney University of Pennsylvania</u>, 2011 U.S.Dist.LEXIS 46477, at *10-14 (E.D.Pa. April 29, 2011)(Baylson, J.), the court denied defendant's motion to dismiss a hostile work environment claim where:

> Robinson repeatedly asked [plaintiff] out, called her sexy, approached her while she was alone in a locker room, asked her multiple times to have sex with him, sent her inappropriate messages, and followed her car after work.

The court wrote that "Robinson's recurring behavior was far more threatening than an isolated offensive utterance or innocuous interaction."  <u>Id.</u>

Considering the totality of the circumstances, I conclude that plaintiff has failed to sufficiently allege the existence of a hostile work environment.  Acknowledging, as discussed above, that plaintiff does not have to plead a "magic number" of incidents, she has nevertheless not alleged enough facts.

There is no indication in the Amended Complaint that the name-calling or alleged hostility was physically threatening,

or even that it occurred in plaintiff's presence.  She has also not alleged that the use of the derogatory terms interfered with her work performance.  She merely refers to the use of the words as "common."  Further, she does not allege that the named defendants participated in the name-calling.

As for defendant Douts's comments to plaintiff about losing credibility, associating with trouble makers and telling her to "back off," I conclude that this isolated incident, as alleged by plaintiff, is insufficient under the totality of the circumstances to establish a hostile work environment. "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  Clark County School District v. Breeden, 532 U.S. 268, 271, 121 S.Ct. 1508, 1510, 149 L.Ed.2d 509, 514 (2001)(quoting Faragher, 524 U.S. at 788, 118 S.Ct. at 2283, 141 L.Ed.2d at 676).

Plaintiff also contends that she experienced a hostile work environment because of the false accusations made by defendants.  At least one federal circuit court of appeals has held that "false accusations of misconduct can contribute to the creation of a hostile work environment."  Noviello v. City of Boston, 398 F.3d 76, 93 (1st Cir. 2005).  However, plaintiff specifically alleges that defendants' accusations occurred on or about July 16, 2009, the date she was suspended without pay, and only eight days before July 24, 2009, when plaintiff was terminated from her position.[45]

---

[45]     Amended Complaint, ¶¶ 28, 33.

Thus, the alleged false accusations and publishing of said accusations occurred on or after the time plaintiff was suspended without pay, and plaintiff has not averred that she returned to work after her suspension.  I therefore cannot conclude that such actions contributed to a hostile work environment when plaintiff was not even present at work.

Analyzing plaintiff's averments under a totality of the circumstances approach, see Faragher, supra, I conclude that she fails to allege severe or pervasive discrimination.[46] Accordingly, I dismiss the claims for discrimination under Title VII and the PHRA based upon a hostile work environment, without prejudice for plaintiff to re-plead to allege facts supporting a conclusion that the alleged discrimination was severe or pervasive.

### False Light Invasion of Privacy

Lastly, defendants move to dismiss plaintiff's Pennsylvania state-law claim for invasion of privacy under a "false light" theory.  They contend that plaintiff has failed to allege widespread publication sufficient to support the cause of action.  I disagree with defendants and find that plaintiff has adequately alleged widespread publication.

An action for invasion of privacy is comprised of four distinct torts: (1) intrusion upon seclusion, (2) appropriation

---

[46]    The defendants also contend that these claims should be dismissed because the Amended Complaint fails to establish individual liability toward the defendants, the fifth prong of the prima facie case.  See Jensen, 435 F.3d at 449.  Because I have concluded that plaintiffs have failed to establish the second Jensen prong: behavior that was sufficiently severe or pervasive to maintain the claim, I do not reach that issue.

of name or likeness, (3) publicity given to private life and (4) publicity placing the person in a false light.  Kline v. Security Guards, Inc., 386 F.3d 246, 259-260 (3d Cir. 2004)(quoting Harris v. Easton Publishing Co., 335 Pa.Super. 141, 152, 483 A.2d 1377, 1383 (1984)).

Pennsylvania has adopted the definition of false light invasion of privacy from the Restatement (Second) of Torts. Vogel v. W.T. Grant Co., 458 Pa. 124, 129-130, 327 A.2d 133, 135-36 (1974).  The Restatement provides:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E.

Thus, a cause of action for false light requires "a major misrepresentation of a person's character, history, activities or beliefs that could reasonably be expected to cause a reasonable man to take serious offense." Rapid Circuits, Inc. v. Sun National Bank, 2011 U.S.Dist.LEXIS 47231, at *55 (E.D.Pa May 2, 2011)(Pratter, J.)(quoting Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648, 654 (Pa. Super. 1999)).

There must also be widespread dissemination of the misrepresentation.  Communication to only a few will not suffice. Donnachie v. Falzone & Associates, 2010 U.S.Dist.LEXIS 81352, at *12 (M.D.Pa. Aug. 11, 2010)(Rambo, J.).

"'Publicity' means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Romano v. Young, 2011 U.S.Dist.LEXIS 10986, at *21 (E.D.Pa. Feb. 1, 2011) (Schiller, J.)(quoting Doe v. Wyoming Valley Health Care System, Inc., 987 A.2d 758, 765-66 (Pa. Super. 2009)).

Defendants contend that plaintiff has not alleged publication widespread enough to support her cause of action. Defendants further contend that dissemination of information to people with whom the plaintiff works is not sufficient publication to state a false light claim, relying on Marion v. City of Philadelphia, 2002 U.S.Dist.LEXIS 23716, at *17-18 (E.D.Pa. Dec. 9, 2002)(Green, S.J.).

However, plaintiff avers that the defendants "published far and wide the false accusations[47] and published far and wide the plaintiff's personal private and confidential personnel matters throughout the County Offices without the plaintiff's knowledge, consent or authorization."[48]  In support of the "far and wide" allegation, plaintiff alleges that "[r]ecipients included the support staff for the County Administrator's Office and Commissioner's Office, Department Heads and others in the

---

[47]     The allegedly false accusations are that "plaintiff violated state ethics, poorly performed her job duties and was unprofessional to which she was terminated from employment."  Amended Complaint, ¶ 85.

[48]     Amended Complaint, ¶ 31.

County Offices, *contracted vendors and the Lancaster County community that had no right to know.*"[49]

Taking these facts as true, in the light most favorable to the plaintiff, I conclude she has sufficiently alleged that false accusations were published by the defendants to persons beyond those who could be classified as working with the plaintiff. Plaintiff's allegations support a reasonable inference that the accusations were published to "so many persons that the matter must be regarded as substantially certain to become one of public knowledge." See Romano, 2011 U.S.Dist.LEXIS 10986 at *21.

Accordingly, because plaintiff has adequately alleged widespread publication, I deny the motion to dismiss the claim for false light invasion of privacy.

## **CONCLUSION**

For the foregoing reasons, I grant in part and deny in part defendants' motion to dismiss. Specifically, I grant the motion regarding the claim in Count I for violation of procedural due process arising from deprivation of a constitutionally-protected property interest, and dismiss this claim with prejudice.

Moreover, I grant the motion to dismiss the claims in Count I for violation of procedural due process arising from

---

[49]    Amended Complaint, ¶ 88 (emphasis added).

deprivation of a liberty interest in reputation, for First
Amendment retaliation, and for conspiracy; and the claims in
Counts II and IV under Title VII and the PHRA based upon hostile
work environment, without prejudice for plaintiff to file a
second amended complaint by October 17, 2011 to re-plead these
claims in accordance with this Opinion.[50]   In all other respects,
defendants' motion is denied.

---

[50]     As discussed above, plaintiff's response to the motion to dismiss
indicates that she withdraws her § 1983 claims in Count I for substantive due
process and politically-motivated wrongful termination.  Accordingly, it is
the sense of this Opinion that plaintiff's second amended complaint will not
include these claims.