<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

WENDY CHAN                 )
                               )
          Plaintiff,      )
                               )      Civil Action
       v.                )      No. 10-cv-03424
                               )
COUNTY OF LANCASTER;       )
DENNIS STUCKEY;           )
SCOTT MARTIN;             )
CRAIG LEHMAN;             )
CHARLES E. DOUTS, JR.;     )
ADREA MCCUE,            )
                               )
          Defendants     )

\*    \*    \*

APPEARANCES:

     NINA B. SHAPIRO, ESQUIRE
        On behalf of Plaintiff

     DAVID L. SCHWALM, ESQUIRE
     ANTHONY T. BOWSER, ESQUIRE
        On behalf of Defendants

\*    \*    \*

# <u>O P I N I O N</u>

JAMES KNOLL GARDNER
United States District Judge

     This matter is before the court on Defendants' Motion for Summary Judgment filed March 15, 2013 ("Motion").[1]

---

[1] The Motion was filed together with a Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment (Document 44-2)("Defendants' Statement of Undisputed Material Facts") and supporting material, as well as Defendants' Brief in Support of Motion for Summary Judgment (Document 44-3)("Defendants' Brief").

(<u>Footnote 1 continued</u>):

## SUMMARY OF DECISION

Preliminarily, plaintiff's requests to withdraw all claims against defendant Dennis Stuckey, and to dismiss her equal protection and employment discrimination claims against defendant Andrea McCue, from the Second Amended Complaint are each granted.[2]

For the reasons expressed below, Defendants' Motion for Summary Judgment is granted in part and denied in part.

Defendants' Motion is granted to the extent that it seeks summary judgment in favor of defendants with respect to plaintiff's claims of hostile work environment under Title VII[3]

---

(Continuation of footnote 1):

On April 8, 2013 Plaintiff's Response in Opposition to Summary Judgment (Document 46) was filed, together with Plaintiff's Memorandum in Support of Response in Opposition to Summary Judgment (Document 46-1) ("Plaintiff's Memorandum"), as well as Plaintiff's Counter[-]Statement of Undisputed Material Facts (Document 46-2) and supporting material.

On April 26, 2013, a Reply Brief in Support of Defendants' Motion for Summary Judgment (Document 55)("Defendants' Reply Brief") was filed, together with a Supplemental Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment (Document 55-1)("Defendants' Supplemental Statement of Facts") and supporting material.

On May 3, 2013, Plaintiff's Responses and Supplemental Counter[-]Statement of Undisputed Material Facts (Document 58) was filed, together with supporting materials.

[2]    Accordingly, Dennis Stuckey is dismissed from this action as a defendant; and plaintiff's request to dismiss her equal protection and employment discrimination claims against defendant McCue in Counts I and IV is deemed to be a request to amend the Second Amended Complaint for the purpose of withdrawing those claims, and the Second Amended Complaint is deemed amended to eliminate those claims, with prejudice, without further pleading.

[3]    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e)-2000(e)-17.

and the Pennsylvania Human Relations Act[4], associational discrimination and retaliation under the Americans with Disabilities Act[5], and for defamation and false light/invasion of privacy under Pennsylvania law because plaintiff has not produced record evidence which would permit a reasonable juror to find in her favor on those claims.

However, Defendants' Motion for Summary Judgment is denied to the extent it seeks summary judgment in favor of defendants and against plaintiff on plaintiff's equal protection race and national origin discrimination claim under 42 U.S.C. § 1983 in Count I because plaintiff produced record evidence which would allow a reasonable juror to conclude the she was treated more harshly than similarly-situated non-Asian, non-Taiwanese management-level county employees.

Further, Defendants' Motion for Summary Judgment is denied to the extent it seeks summary judgment in favor of defendants on plaintiff's Title VII disparate treatment race and national origin discrimination claim against defendant County of Lancaster, and on plaintiff's parallel PHRA claim against defendants County of Lancaster, Scott Martin, Craig Lehman, and Charles E. Douts, Jr.

---

[4]        Act of October 27, 1955, P.L. 744, No. 222, §§ 1-13, as amended, 43 P.S. §§ 951-963 ("PHRA").

[5]        Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101-12213 ("ADA").

Similarly, Defendants' Motion for Summary Judgment is denied to the extent that it seeks summary judgment in favor of defendants on plaintiff's retaliation claim against the County under Title VII in Count II, and against defendants Martin, Lehman, and Dounts under the PHRA in Count IV.

As explained below, plaintiff established a prima facie case of race and national origin discrimination, as well as Title VII retaliation. Although defendants proffered a legitimate non-discriminatory reason for plaintiff's suspension and termination, plaintiff's record evidence could permit a reasonable juror to conclude the proffered reason was pretextual.

Accordingly, the following claims remain in plaintiff's Second Amended Complaint for disposition in this matter: plaintiff's section 1983 equal protection claim in Count I against the County and defendant Martin, Lehman, and Douts; plaintiff's disparate treatment race and national origin discrimination claim against the County (in Count II and Count IV) and defendants Martin, Lehman, and Douts (in Count IV); plaintiff's retaliation claim against the County (in Count II and Count IV) and against defendants Martin, Lehman, and Douts (in Count IV).

## JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331. This court has supplemental jurisdiction over plaintiff's pendent state-law claims. See 28 U.S.C. § 1367.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims occurred in Lancaster County, Pennsylvania, which is located within this judicial district.

## PROCEDURAL HISTORY

Plaintiff initiated this action on July 13, 2010 by filing a six-count Complaint against defendants. Defendants filed a motion to dismiss on November 16, 2010. Pursuant to a stipulation approved by my Order dated January 12, 2011, and filed January 13, 2011, plaintiff filed a six-count Amended Complaint on February 7, 2011.

### Amended Complaint

Plaintiff's claims in each iteration of her pleadings arose from actions allegedly taken by defendants in the context of plaintiff's employment as Director of Human Resources for the County of Lancaster. These claims concern the circumstances of plaintiff's suspension without pay and eventual termination from

her position as Director of Human Resources for Lancaster County.

Count I of the Amended Complaint was brought pursuant to 42 U.S.C. § 1983 and alleged various deprivations of plaintiff's federal constitutional rights by all defendants.

Specifically, Count I alleged claims for deprivation of procedural due process, substantive due process, and equal protection in violation of the Fourteenth Amendment; claims for politically motivated wrongful termination and retaliation in violation of the First Amendment; and a claim of conspiracy to violate plaintiff's federal constitutional rights to procedural due process and equal protection of law.

Count II of the Amended Complaint alleged a claim against defendant County of Lancaster for violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e)-2000(e)-17.

Count III of the Amended Complaint alleged a claim against defendant County of Lancaster for violating the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101-12213.

Count IV of the Amended Complaint alleged a claim against all defendants for violating the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, No. 222, §§ 1-13, as amended, 43 P.S. §§ 951-963.

Count V of the Amended Complaint alleged a Pennsylvania state-law claim against defendants Stuckey, Martin, Lehman, Douts, and McCue ("the individual defendants") for defamation.

Finally, Count VI of the Amended Complaint alleged a Pennsylvania state-law claim against the individual defendants for false light invasion of privacy.

### September 23, 2011 Order and Opinion

On February 24, 2011 defendants filed a motion to dismiss plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

By Order and accompanying Opinion dated September 23, 2011 and filed September 26, 2011, I granted in part and denied in part defendants' motion to dismiss the Amended Complaint.

Specifically, I granted defendants' motion to dismiss the claims in Count I against all defendants for violation of procedural due process arising from deprivation of a constitutionally protected property interest, and dismissed that claim with prejudice.

Next, I granted defendants' motion to dismiss the claims in Count I against all defendants for violation of procedural due process arising from deprivation of a liberty interest in reputation, for First Amendment retaliation, and for

conspiracy pursuant to 42 U.S.C. § 1983, without prejudice for plaintiff to file a second amended complaint.

In addition, I granted defendants' motion to dismiss the claim in Count II against defendant County of Lancaster for violation of Title VII based upon a hostile work environment, without prejudice for plaintiff to file a second amended complaint.

Finally, I granted defendants' motion to dismiss the claims in Count IV against all defendants for violation of the Pennsylvania Human Relations Act ("PHRA") based upon a hostile work environment, without prejudice for plaintiff to file a second amended complaint. In all other respects defendants' motion to dismiss plaintiff's Amended Complaint was denied.

## Second Amended Complaint

On October 17, 2011 plaintiff filed a six-count Second Amended Complaint.

Count I of the Second Amended Complaint asserts equal protection, procedural due process, and conspiracy claims against all defendants pursuant to section 1983.

Count II of the Second Amended Complaint alleges violations of Title VII against defendant County of Lancaster.

Count III of the Second Amended Complaint alleges violations of the Americans with Disabilities Act against defendant County of Lancaster.

Count IV of the Second Amended Complaint alleges parallel violation of the Pennsylvania Human Relations Act against defendant County of Lancaster, and claims against the individual defendants under an "aiding and abetting" theory.

Count V of the Second Amended Complaint alleges a Pennsylvania state-law claim for defamation against the individual defendants.

Finally, Count VI of the Second Amended Complaint alleges a Pennsylvania state-law claim for false light/invasion of privacy against the individual defendants.

### September 28, 2012 Order and Opinion

On October 31, 2011 defendants' filed a motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(b).

On November 17, 2011 Ms. Chan filed her response and memorandum opposing defendant's motion to dismiss and attached her [Proposed] Third Amended Complaint in support of her alternative motion for leave to further amend her pleading.

On November 29, 2011 defendants filed their response in opposition to plaintiff's alternative request for leave to further amend her pleading.

By Order and accompanying Opinion dated and filed September 28, 2012, I granted in part and denied in part defendants' motion to dismiss the Second Amended Complaint.

Specifically, I granted that motion to the extent it sought to dismiss plaintiff's section 1983 procedural due process and conspiracy claims from Count I of the Second Amended Complaint, and dismissed those claims with prejudice.

However, I denied that motion to the extent it sought to dismiss plaintiff's disability discrimination claims under the Americans with Disabilities Act in Count III, and under the Pennsylvania Human Relations Act in Count IV.

## Pending Claims

As a result of the September 28, 2012 Order and Opinion, the following claims remained in the Second Amended Complaint:

> Plaintiff's section 1983 equal protection claim in Count I against all defendants;

> Plaintiff's Title VII disparate treatment, retaliation, and hostile work environment claim in Count II against defendant County of Lancaster;

> Plaintiff's ADA retaliation and associational discrimination claim in Count III against defendant County of Lancaster;

> Plaintiff's PHRA claims in Count IV against all defendants;

> Plaintiff's defamation claim in Count V against the individual defendants; and

> Plaintiff's false light/invasion of privacy claim in Count VI against the individual defendants.

## Defendants' Motion for Summary Judgment

Defendants' Motion for Summary Judgment was filed on March 15, 2013, together with Defendants' Brief, Defendants' Statement of Undisputed Material Facts, and supporting exhibits. The Motion seeks summary judgment in favor of defendants and against plaintiff on all claims remaining in the Second Amended Complaint.

On April 8, 2013, Plaintiff's Response in Opposition to Summary Judgment was filed together with Plaintiff's Memorandum, Plaintiffs' Counter[-]Statement of Undisputed Material Facts, and supporting exhibits.

By Order dated April 23, 2013 and filed April 24, 2013, I granted defendants' request for leave to file a reply brief, established staggered deadlines for the parties to file supplemental statements of undisputed material facts, and scheduled oral argument for March 13, 2013.

In accordance with my April 23, 2013 Order, defendants filed their reply brief and a supplemental statement of facts on April 26, 2013, and plaintiff filed her responsive supplemental statement of facts on May 3, 2013. At the conclusion of oral argument on May 13, 2013, I took the matter under advisement. Hence this Opinion.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure permits a party to seek summary judgment with respect to a claim or defense, or part of a claim or defense. Rule 56(a) provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); National Association for the Advancement of Colored People "NAACP" v. North Hudson Regional Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2012).

For a fact to be considered material, it "must have the potential to alter the outcome of the case." Id. (citing Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). Disputes concerning facts which are irrelevant or unnecessary do not preclude the district court from granting summary judgment. Id.

Where a party asserts that a particular fact is, or cannot be, genuinely disputed, the party must provide support for its assertion. Fed.R.Civ.P. 56(c)(1). Rule 56(c)(1) provides that party may support its factual assertions by

> (A) citing particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

When considering a motion for summary judgment, the district court must view the facts and record evidence presented "in the light most favorable to the non[-]moving party." North Hudson, 665 F.3d at 475 (quoting Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

If the moving party shows that there is no genuine issue of fact for trial, "the non-moving party then bears the burden of identifying evidence that creates a genuine dispute regarding material facts." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Where a defendant seeks summary judgment, the plaintiff cannot avert summary judgment with speculation, or by resting on the allegations in his pleadings, but rather he must present competent evidence from which a jury could reasonably find in his favor. Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995)(Reed, J.).

"Ultimately, [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Id. (quoting

<u>Matsushita Electric Industries Co. v. Zenith Radio Corp.</u>,
475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986))
(internal quotations omitted and alteration in original).

## FACTS

Upon consideration of the pleadings, record papers, exhibits, affidavits, and depositions, and drawing all reasonable inferences in favor of plaintiffs as required by the forgoing standard of review, the pertinent facts are as follows.

### Parties

Plaintiff Wendy Chan is an Asian female.  She was born in Taiwan and is a naturalized citizen of the United States. Ms. Chan is the former Director of Human Resources for the County of Lancaster.[6]

Ms. Chan graduated from law school in 2001 and began an extensive, year-long management-level training program for the Commonwealth of Pennsylvania.

Prior to her employment as Director of Human Resources with defendant County of Lancaster ("the County"), plaintiff spent, in chronological order from earliest to latest, two or three years as an equal opportunity specialist with the Pennsylvania Department of Public Welfare; one year as a human resource analyst with the Pennsylvania Department of

---

[6]     Plaintiff's Exhibit A (Document 46-5), Affidavit of Wendy Chan sworn and verified on April 8, 2013 ("Chan Affidavit"), at ¶¶ 1-2.

Transportation; two or three years as the human resources director with the Pennsylvania Gaming Control Board; and nine months as a labor relations analyst again with the Pennsylvania Department of Public Welfare.[7]

Defendant County of Lancaster is a Pennsylvania municipal entity governed and managed by a Board of Commissioners.[8]

Defendants Dennis Stuckey, Scott Martin, and Craig Lehman (together, "the Commissioners") made up the three-member Board of Commissioners of Lancaster County at all times pertinent to this action. Mr. Stuckey was Chairman, and Mr. Martin was Vice-Chairman, of the Board of Commissioners.[9] The Board of Commissioners is solely responsible for the hiring and firing of the County's management-level staff, including the Director of Human Resources.[10]

---

[7] Plaintiff's Exhibit G (Document 46-11), Deposition of Wendy Chan taken February 8, 2010 in Jennifer <u>Stoltz v. County of Lancaster, et al.</u>, case no. 08-cv-05622 (E.D.Pa., Stengel, J.) at pages 14-17.

[8] Plaintiff's Exhibit A, Chan Affidavit at ¶ 3.

[9] <u>Id.</u>

Plaintiff testified that she has never heard any of the Commissioners say anything to her which she believed to be discriminatory. Moreover, she testified that she did not know of any of the Commissioners saying anything of a discriminatory nature to a third person. <u>See</u> Plaintiff's Exhibit CC (Document 46-33), Deposition of Wendy Chan taken January 31, 2013 ("Chan Deposition 1/31/2013") at page 147.

[10] Plaintiff's Counter[-]Statement of Undisputed Material Facts at ¶ 3.

Defendant Charles E. Douts, Jr. was the County Administrator of Lancaster County.  Mr. Douts reported directly to the Board of Commissioners, and was plaintiff's direct supervisor.[11]

Defendant Andrea McCue was the Chief Clerk of the County of Lancaster.  Ms. McCue oversaw the support staff of the Lancaster County Commissioners' Office and of the County Administrator's Office.[12]  She was supervised by the Board of Commissioners.[13]

### Hiring

Bonnie Ashworth became the Interim Director of Human Resources for the County in February 2008, when the former director, Jane E'del, was terminated from the position during her 90-day probationary period.  Ms. Ashworth retired from her position as Interim Director on August 15, 2008.[14]

---

[11]        Plaintiff's Exhibit A, Chan Affidavit at ¶¶ 2-3.

[12]        Id. at ¶ 6.

[13]        Id. at ¶ 3.

[14]        Plaintiff's Exhibit B (Document 46-6), copy of Lancaster New Era online news article, Chad Umble, *County's interim human resources chief retires*, originally published August 27, 2008, updated October 3, 2008 ("Umble, *County's interim human resources chief retires*").

Following the retirement of Ms. Ashworth, Chief Clerk
McCue served as Interim Director of Human Resources while the
County sought candidates to fill the position permanently.[15]

During the meeting of the Board of Commissioners on
September 10, 2008, Financial Solutions (the firm hired to
conduct an audit of the County's Human Resources Department)
presented its report to the Commissioners. Financial Solutions
also assisted the County in conducting the search for a new
Director of Human Resources.[16]

The deadline for candidates to apply for the position
of Director of Human Resources was September 12, 2008. As of
the September 10, 2008 commissioners' meeting, the County had
received more than 60 applications.[17] Those applications were
screened and selected candidates, including Ms. Chan, were
interviewed.[18]

---

[15]    Plaintiff's Exhibit B, Umble, *County's interim human resources chief retires.*

[16]    Plaintiff's Exhibit C (Document 46-7), minutes of the Lancaster
County Commissioners' Meeting held Wednesday, September 10, 2008 ("Comm'r
Mtg. Minutes 9/10/2008"), at pages 1-2.

[17]    Id. at page 2.

[18]    Id.; see Plaintiff's Exhibit DD (Document 46-34), Deposition of
Craig Lehman taken February 22, 2013 ("Lehman Deposition"), at page 42 ("I
thought [plaintiff] gave a very good interview...."); Plaintiff's Exhibit GG
(Document 46-37), Deposition of Charles E. Douts, Jr., taken February 20,
2013, at pages 35-36 ("Wendy was interviewed by the search committee and then
Wendy was interviewed by the Board of Commissioners. And I was present at
both of those instances.")

The defendant Commissioners appointed Ms. Chan, by a unanimous vote, to the position of Director of Human Resources for the County.[19]

## Employment

Ms. Chan began her employment as Director of Human Resources on January 5, 2009.  Plaintiff's direct supervisor was County Administrator Douts.  She also reported to the Commissioners. [20]

The Commissioners and Mr. Douts directed plaintiff to work toward addressing the issues and deficiencies highlighted in the September 10, 2008 Financial Solutions audit report.[21] Specifically, plaintiff was directed to, among other things, "address unequal employment conditions for employees, and address discrimination, harassment, disparate and different treatment of employees on the basis of sex, age, disability and race/color."[22]

During the seven-month period when plaintiff was employed by the County, she "attempted to remedy, correct and eliminate the discrimination and hostility in the work place at Defendant County" by: (1) "hir[ing] staff to train and educate

---

[19]     Plaintiff's Exhibit DD, Lehman Deposition at pages 52-53.

[20]     Plaintiff's Exhibit A, Chan Affidavit at ¶ 2.

[21]     Id. at ¶ 7.

[22]     Id. at ¶ 7a.

Lancaster County employees and Department Heads relative to discrimination and harassment in the workplace";[23] (2) "recommend[ing the] institut[ion of] corrective actions for employees who harassed [other] employees and/or retaliated against employees [who] reported discrimination";[24] (3) "recommend[ing the installation of] a handle bar in the handicap stall in the public restroom [of the county courthouse] after a disabled employee fell";[25] (4) "recommend[ing the] remov[al] and reassign[ment of] the sole female Park Ranger[, Jennifer Stoltz,] from a perpetuating hostile work environment";[26] (5) "instituting policies that were missing or omitted from County practice[,] including procedures relative to wage and hour law, the Family Medical Leave Act, discipline and due process;"[27] and "[i]nvestigat[ing] sexual harassment allegations that were the basis for a pending lawsuit against Lancaster County."[28]

Plaintiff also sought, by email sent May 7, 2009 to Director of Facilities Keith Harner and County Administrator

---

[23]     Plaintiff's Exhibit A, Chan Affidavit at ¶ 9a.

[24]     Id. at ¶ 9b.

[25]     Id. at ¶ 9c.

[26]     Id. at ¶ 9d.

[27]     Id. at ¶ 9e.

[28]     Id. at ¶ 13e.  The particular time during plaintiff's tenure as Director of Human Resources at which she took these particular actions is not clear from the record.

Douts, to have a curtain installed in a first-floor, handicap-accessible restroom in the county courthouse which did not have a door on it.[29]  Plaintiff sought to install the curtain in order to provide privacy to anyone who used that stall; she did not believe that installing the curtain would render the stall ADA-compliant.[30]

By emails sent May 8, 2009, Mr. Douts directed   Mr. Harner to install the curtain, and Mr. Harner replied that he would do so.  The May 7, 2009 email from plaintiff to Mr. Harner was to follow up on a work-order request which plaintiff submitted "a few months" before.[31]

### Jennifer Stoltz

Jennifer Stoltz was the only female ranger in the Parks Department.  Ms. Stoltz reported incidents of alleged sexual harassment to plaintiff, who, in turn, reported

---

[29]     Defendants' Supplemental Statement of Facts, Exhibit J (Document 55-12), copy of chain of email communications beginning May 7, 2009 and ending May 8, 2009 between Wendy Chan, Keith Harner, and Charlie Douts, with copies to Donald E. LeFever; see also Plaintiff's Exhibit GG (Document 46-37), Deposition of Charles E. Douts, Jr., taken February 20, 2013, at pages 35-36.

[30]     Plaintiff's Exhibit CC, Chan Deposition 1/31/2013 at pages 141-142.

[31]     Defendants' Supplemental Statement of Facts, Exhibit J (Document 55-12), copy of chain of email communications beginning May 7, 2009 and ending May 8, 2009 between Wendy Chan, Keith Harner, and Charlie Douts, with copies to Donald E. LeFever.

Ms. Stoltz's allegations to the Commissioners during an executive session meeting.[32]

### Benecon/Michelle Immel

Benecon was the County's health-insurance broker during plaintiff's tenure as Director of Human Resources.[33]

On May 27-28, 2009 plaintiff, together with County Administrator Douts, traveled to State College, Pennsylvania and attended a conference of the County Commissioners Association of Pennsylvania ("CCAP"). During the CCAP conference, plaintiff and Mr. Douts were scheduled to have dinner with representatives from Benecon.[34]

Before plaintiff left for the conference, her husband, Joe DeModena, asked her what plans she had during the conference and she told him about the Benecon dinner. In response, plaintiff's husband mentioned that he had recently sold a car to a Benecon employee. Plaintiff did not know the name of the employee prior to the CCAP conference and she received no

---

[32]        Plaintiff's Exhibit FF (Document 46-36), Deposition of Dennis Stuckey taken February 14, 2013 ("Stuckey Deposition 2/14/2013"), at page 81.

[33]        Plaintiff's Exhibit N, [Eric N. Athey, Esquire] Summary of Discussion with Wendy Chan, supplemented and endorsed by plaintiff on July 21, 2009 (Document 46-18)("Supplemented Summary of 7/14/2009 Conversation with Wendy Chan"), at page 1.

[34]        Id.

indication that there were any problems related to the vehicle purchase.[35]

During the Benecon dinner, plaintiff spoke with Dave Wuenschel, a Benecon representative, and, while speaking about their respective families, plaintiff mentioned to Mr. Wuenschel that her husband was a car salesman and had recently sold a car to a Benecon employee.[36]

Several days after CCAP conference, plaintiff's husband informed her that the Benecon employee was unhappy with the vehicle purchased and had lodged several complaints about the purchase.[37]

The following day, plaintiff's husband informed her that, although the problems with the car had been fixed, the Benecon employee was still not happy and had written emails to the dealership and the Better Business Bureau.[38] The follow-up issues raised by the Benecon employee did not impact Mr. DeModena's sales commission.[39]

---

[35]        Plaintiff's Exhibit N, Supplemented Summary of 7/14/2009 Conversation with Wendy Chan, at pages 1-2.

[36]        Id. at page 2.

[37]        Id. at at page 1.

[38]        Id.; see Defendants' Statement of Undisputed Material Facts, Exhibit A (Document 44-2), which is copy of a chain of emails sent between June 19, 2009 and July 1, 2009 among Michelle Immel, Denise Burkholder (Executive Assistant to the Mayor, City of Lancaster) and Commissioner Dennis Stuckey, at page 3 of 4.

[39]        Plaintiff's Exhibit N, Supplemented Summary of 7/14/2009 Conversation with Wendy Chan, at page 2.

After the CCAP conference, plaintiff had a ten-minute telephone conversation with Mr. Wuenschel, during which they discussed the possibility of Benecon sponsoring some portion of a "Family Fun Day" for the County's employees which plaintiff was working to organize.  Mr. Wuenschel inquired about whether plaintiff intended to bring her family to the event.  Plaintiff told Mr. Wuenschel that she would likely bring her children, but that her husband would not able to attend because he worked on Saturdays (the day the event was scheduled).  Mr. Wuenschel then asked plaintiff how her husband was doing and if he was selling more cars to Benecon employees.  Both laughed at Mr. Wuenschel's comment.[40]

Plaintiff told Mr. Wuenschel that she did not know of any other Benecon employees having purchased a vehicle from her husband, and that the employee who had purchased the vehicle was unhappy with the purchase and had lodged a complaint with the Better Business Bureau.[41]

Mr. Wuenschel asked whether the Better Business Bureau complaint could be dropped by the employee.  Plaintiff responded that she did not know whether such a complaint could be dropped. Plaintiff told Mr. Wuenschel not to worry about the complaint.

---

[40]     Plaintiff's Exhibit N, Supplemented Summary of 7/14/2009 Conversation with Wendy Chan, at page 3.

[41]     Id. at pages 3-4.

Mr. Wuenschel did not mention taking any action concerning the Benecon employee at that time, and plaintiff did not ask him to do so.[42]

However, on that call, Mr. Wuenschel asked plaintiff for the name of the Benecon employee and plaintiff told him it was "Michelle", though she did not know the last name. Mr. Wuenschel told plaintiff that he knew a Michelle that worked for Benecon who was a very nice woman was going through some difficult personal issues at the time.[43]

After this first telephone conversation with Mr. Wuenschel, plaintiff told her husband about the buyer's issues and suggested to her husband that he do everything he could to address any issues with her vehicle.[44]

Several days after the first telephone conversation between plaintiff and Mr. Wuenschel, Mr. Wuenschel called the County's human resources department and left a message with an employee requesting that plaintiff return his call.

Plaintiff returned Mr. Wuenschel's call and, during their second telephone conversation, Mr. Wuenschel told plaintiff that he spoke with a Michelle, but that she had not

---

[42]     Plaintiff's Exhibit N, Supplemented Summary of 7/14/2009 Conversation with Wendy Chan, at page 4.

[43]     Id.

[44]     Id. at page 5.

purchased a car recently.  Plaintiff asked Mr. Wuenschel who he
had spoken to, and he responded that he spoke to Michelle
Hamilton.  Plaintiff told Mr. Wuenschel that she believed the
buyer's name to be Michelle Immel.[45]

Mr. Wuenschel apologized for the confusion and said it
was embarrassing not to know all of Benecon's employees.
Mr. Wuenschel immediately told plaintiff he would call back and
then ended their second telephone conversation.[46]

Five or ten minutes after the second telephone
conversation between plaintiff and Mr. Wuenschel, Mr. Wuenschel
called plaintiff back, this time with Terry Bowling on the line
by speaker-phone.  Mr. Bowling was Michelle Immel's manager at
Benecon.[47]

Mr. Bowling opened this third call by asking "What's
going on?"  Plaintiff responded that she "was just trying to
help Michelle out" and that she "just wanted to resolve the
issue."[48]  Mr. Bowling then stated that "they were going to talk
to Ms. Immel but that he need to talk to Benecon's Human
Resources Department first."  Plaintiff inquired as to why they
would do so, and Mr. Bowling chided plaintiff "to the effect of

---

[45]    Plaintiff's Exhibit N, Supplemented Summary of 7/14/2009
Conversation with Wendy Chan, at page 6.

[46]    Id.

[47]    Id. at page 7.

[48]    Id.

'You're in HR, don't you think I should talk to our HR department first.'"[49]

Plaintiff did not understand why Mr. Bowling needed to talk with Benecon's human resources department, but she hesitantly and jokingly responded, "Of course, you always talk to HR before saying anything or doing anything because we know everything." All three laughed in response. This third call among plaintiff, Mr. Wuenschel, and Mr. Bowling lasted less than five minutes. Plaintiff did not tell either Mr. Wuenschel or Mr. Bowling that anything should be done to Michelle Immel by Benecon.[50]

Subsequent to this third conversation, someone from Benecon spoke with Michelle Immel concerning her automobile purchase from plaintiff's husband.[51]

### Ms. Immel's Email to Dealership

On Friday, June 19, 2009, Michelle Immel sent an email to Rick Price at Lancaster Toyota Mazda, which is the car dealership where Ms. Immel purchased her vehicle, and where plaintiff's husband is employed. Ms. Immel's email to Mr. Price at the car dealership stated, in pertinent part:

---

[49]    Plaintiff's Exhibit N, Supplemented Summary of 7/14/2009 Conversation with Wendy Chan, at page 7.

[50]    Id. at page 8.

[51]    Id.

I am not sure who's (sic) wife is Wendy that works for
Lancaster County -- but apparently late yesterday a
"[W]endy" who identified herself as the wife of the
place where I bought my car from called my employer
Terry Bowling/The Benecon Group because of my problems
with Lancaster Toyota Mazda????  I am not sure what is
going on or why she thought it necessary to call my
employer –- but that is unacceptable!  As for my boss
-- he also agrees -- if you all were trying to get me
in trouble -- it didn't work -- my vehicle purchase
had NOTHING to do with my employer -- the issues I
have had, and the minor issues still left to be
resolved were between Lancaster Toyota Mazda and
myself!  I'd appreciate if our issues stayed
professional and not get your personal spouses
involved.  I have been very nice to Joe the salesman
and he can attest to that -- I simply just need
resolution to existing problems -- ....[52]

That same day, Ms. Immel's email to the dealership was
forwarded from Rick Price to Joe DeModena, from Joe DeModena to
plaintiff.

After plaintiff received the forwarded copy of
Ms. Immel's email to the car dealership, she called
Mr. Wuenschel at Benecon.  Plaintiff asked Mr. Wuenschel, "Why
does Michelle think I'm trying to get her fired?"; "What did you
say to her?"  Plaintiff told Mr. Wuenschel, "I'm not trying to
get anyone fired"; "[s]he thinks we're trying to get her in
trouble and we are just trying to help."[53]  Plaintiff then told
Mr. Wuenschel that she would forward a copy of Ms. Immel's email

---

[52]      Plaintiff's Exhibit QQ (Document 58-5), email chain beginning
with email sent from Michelle Immel to Rick Price sent on June 19, 2009, at
page 1.

[53]      Plaintiff's Exhibit N, Supplemented Summary of 7/14/2009
Conversation with Wendy Chan, at page 8.

to the dealership so that he could review it personally.[54]  Mr.
Wuenschel told plaintiff that Ms. Immel's actions were "not good
for our [(Benecon's)] image."[55]

Plaintiff responded that she "wasn't sure what was
going on" and "reiterated the fact that she was just trying to
help" Ms. Immel.[56]  Plaintiff asked Mr. Wuenschel "in disbelief"
whether Mr. Bowling thought plaintiff wanted Ms. Immel to be
fired.  Mr. Wuenschel "became very apologetic" and tried to
explain by saying, "I can tell you that we value the County as a
customer.  I mean it.  This is from the top down."[57]  Plaintiff
told Mr. Wuenschel that she and her husband were "just trying to
help [Ms. Immel] out."  Mr. Wuenschel told plaintiff that he
would try and "put this to bed" and it "was just a comedy of
errors spiraling out of control."[58]

Plaintiff forwarded Ms. Immel's email to the car
dealership to Dave Wuenschel at Benecon, and Mr. Wuenschel then
forwarded it to Terry Bowling, Ms. Immel's supervisor.

Mr. Bowling responded by email to Mr. Wuenschel as
follows:  "I discussed with Shannon before talking to Michelle.

---

[54]      Plaintiff's Exhibit N, Supplemented Summary of 7/14/2009
Conversation with Wendy Chan, at page 8.

[55]      Id.

[56]      Id. at page 9.

[57]      Id.

[58]      Id. at page 8.

As far as we are concerned, Benecon has absolutely no role here."[59]

On June 23, 2009 plaintiff sent an email to Mr. Wuenschel which stated: "Hopefully everything is straightened out with Terry [Bowling] and Michelle [Immel]."[60]

### Ms. Immel's Email to City

On Friday night, June 19, 2009 (the same day that Michelle Immel sent her email to Rick Price at Lancaster Toyota Mazda), at 10:10 o'clock p.m., Ms. Immel sent an email to Bernice L. Burkholder, Executive Assistant to the Mayor of the City of Lancaster, stating, in pertinent part:

> Today while at work my VP of my division called me on
> my phone and asked me to come down to his office --
> which I did.  I was told by my boss that yesterday
> afternoon he received a call from "Wendy" from the
> County of Lancaster....  [H]e stated that she told him
> I have been having issues with Lancaster Toyota Mazda
> and that she was the spouse of one of the employees I
> had been dealing with.  I really don't understand why
> a spouse of someone who sold me a vehicle would
> involve herself -- calling my employer which has
> absolutely nothing to do with any issue concerning my
> vehicle purchase....  He did state that the County of
> Lancaster is one of our clients -- he asked if he
> could do anything to help -- I said no, since it's a
> personal issue and she had no right involving or
> calling my employer -- as she agreed!...  I did some
> research and discovered that Wendy [Chan] DeModena is
> the HR director of the County of Lancaster, [s]he

---

[59]     Plaintiff's Exhibit QQ (Document 58-5), email chain beginning with email sent from Michelle Immel to Rick Price sent on June 19, 2009, at page 1.

[60]     Defendants' Supplemental Statement of Undisputed Material Facts, Exhibit N (Document 55-16), copy of email sent from Wendy Chan to Dave Wuenschel on June 23, 2009 at 10:04 a.m.

would be Joe DeModena's wife -- my salesman.  She has no business contacting me or my employer -- maybe by contacting my employer it was to sort of scare me out of persuing (sic) the issues with BBB concerning the vehicle cosmetics that were to be corrected -- because in her position she may have the power to pull the counties (sic) account away from my employer causing a big dollar loss -- therefore, my employer possibly blaming me -- in the end could lead to termination? Again, as I stated before there is no issue to have involved my employer at all!

                    *   *   *

I am really upset that a county employee used her employment status to[,] I think[,] try to intimidate me or scare me.

                    *   *   *

I hope Ms. [Chan] doesn't try to get involved any further -- I have no issues with her -- or the County of Lancaster -- it's with Lancaster Toyota Mazda and myself -- and not my employer!

*   *   *

Michelle Immel/Lancaster, PA[61]

     The following Monday morning, June 22, 2009,

Ms. Burkholder replied to Michelle Immel's email and informed

Ms. Immel that she worked for the City of Lancaster, rather than

the County of Lancaster; that Mayor Gray was not involved with

the supervision of employees of the County of Lancaster; and

---

[61]     Defendant's Statement of Undisputed Material Facts, Exhibit A, at pages 3-4.

that Ms. Immel would need to contact the County to pursue the issue further.[62]

At Ms. Immel's request, Ms. Burkholder provided Commissioner Stuckey's email address to Ms. Immel. Thereafter, Michelle Immel emailed her letter-complaint concerning plaintiff to Commissioner Stuckey and then, on July 1, 2009 sent a follow-up email to Commissioner Stuckey to confirm his receipt of her previous email.[63]

## County Administrator Douts' Notes

On July 2, 2009 Commissioner Stuckey asked Mr. Douts if he knew plaintiff's husband's last name. Mr. Douts told Commissioner Stuckey that he did not know plaintiff's husband's last name, but did tell Commissioner Stuckey that he thought plaintiff's husband was Italian and that he was a car salesman.[64]

On July 6, 2009 Commissioner Stuckey shared the email which Ms. Immel sent to him with Mr. Douts. Commissioner Stuckey told Mr. Douts that he had spoken to plaintiff about the email on July 2, 2009.[65] At the end of the day on July 6, 2009,

---

[62] Defendant's Statement of Undisputed Material Facts, Exhibit A, at page 2.

[63] Id. at page 1.

[64] Plaintiff's Exhibit H (Document 46-12), copy of handwritten notes of defendant Douts labeled "Memo to file" and dated July 24, 2009 ("Douts' Memo"), at page 1.

[65] Id.; see Plaintiff's Exhibit FF, Stuckey Deposition 2/14/2013 at pages 95 and 97.

Commissioner Stuckey, County Administrator Douts, and then-County Solicitor Donald LeFever met to discuss the matter.[66]

On July 7, 2009 Solicitor LeFever reviewed a written response to Michelle Immel that Mr. Douts prepared. Mr. Douts emailed his response to Ms. Immel and received a reply from her indicating that she "seemed to be okay with the County's handling" of the matter.[67] Prior to sending his email response to Ms. Immel, Mr. Douts participated in a phone conversation with Commissioner Stuckey and Terry Bowling of Benecon. On that call, Mr. Bowling "seemed apologetic" and "did not feel the County was out of line" and that "Wendy was only trying to help out."[68]

On July 10, 2009 Mr. Douts met with plaintiff to "discuss the car issue" and give plaintiff a chance to "explain her actions." During this meeting, plaintiff gave a brief outline of the events and told Mr. Douts that she was only trying to help out.[69]

---

[66]     Plaintiff's Exhibit H, Douts' Memo, at page 1.

[67]     Id.

[68]     Id.

[69]     Id.

During their July 10, 2009 meeting, Mr. Douts discussed with plaintiff a list of some other issues[70] -- "some very minor, others a little more serious."

Concerning the Benecon/Michelle Immel issue, Mr. Douts told plaintiff that Ms. Immel was "OK with [the] County". He read to plaintiff his email response to Ms. Immel and told plaintiff "we were to take appropriate action." Mr. Douts also mentioned to plaintiff that her "credibility could be tarnished" by the incident and noted that she was in a "high profile position 'fish bowl'" as Director of Human Resources.

Mr. Douts "warned her to be careful [and] not to be trusting [and] sharing confidential information."[71] Mr. Douts told plaintiff that he did not know whether the Benecon/Michelle Immel issue "was going to go further in regards to her

---

[70]        The third and final page of Mr. Douts' handwritten memo contains a the following list next to the notation "Friday 7/10/09 Mtg With Wendy":

> - Benecon
> - Tammy -- Jim Hackett discipline
> - Grievance -- Todd Hawn – Tammy
> - Jen Stoltz contact must end
> - Telephone -- voicemail change
> - team building exercise -- cancel
> - July 4th Holiday [illegible] -- Hal was there!
> - Bob Devenshire -- email alerting others about opening training center
> - Interviewing employees, including Jim H.
> - Vendors for gifts/donation –- Fun day
>
> - [illegible]
> - [illegible]

Plaintiff's Exhibit H, Douts' Memo, at page 3.

[71]        Id. at page 2.

relationship...with the county."[72]  Nonetheless, Mr. Douts told

plaintiff that he "felt that [they] had put it to bed with Ms.

Immel and that that was over." [73]

On July 13, 2009 Commissioner Stuckey shared the email

Ms. Immel sent to him -- which she originally sent to the City

of Lancaster -- with the entire Board of Commissioners during an

executive session.[74]

Prior to receiving a copy of an email from Michelle

Immel, Commissioner Scott Martin had already learned, through

his friend, Matthew Kirk, the President of Benecon, that some

issue had arisen concerning the County's human resources

department.  Commissioner Martin "wasn't very thrilled that [he]

found out from an outside entity of something going on"

concerning the County's human resources department.[75]

---

[72]     Plaintiff's Exhibit GG (Document 46-37), Deposition of Charles E.
Douts, Jr., taken February 20, 2013 ("Douts' Deposition 2/20/2013"), at page
149.

[73]     Id.

[74]     Plaintiff's Exhibit H, Douts' Memo, at page 2.

[75]     Plaintiff's Exhibit EE (Document 46-35), Deposition of Scott
Martin taken February 26, 2013, at page 7.

## July 14, 2009 Meeting

On July 14, 2009 County Administrator Douts and Eric N. Athey, Esquire,[76] met with plaintiff.  During this meeting, Attorney Athey "asked Ms. Chan to explain the Benecon/Immel situation 'from the beginning'."[77]

## July 16, 2009 Suspension

On July 16, 2009 plaintiff was suspended without pay from her position as Director of Human Resources.[78]  By letter dated July 16, 2009 from County Administrator Douts to plaintiff, plaintiff was informed that "based upon information provided by you and other witnesses, [she was] being suspended from employment without pay pending further investigation."[79]

---

[76]	During the period of time surrounding plaintiff's suspension and termination, Attorney Athey, and Amy Macinanti, Esquire worked for a law firm which the County hired to assist it with the inquiry into plaintiff's conduct as Director of Human Resources.  See Plaintiff's Exhibit KK (Document 46-41), Deposition of [Attorney] Eric N. Athey taken February 15, 2013, at page 13.

Commissioner Lehman testified that the Board of Commissioners, in consultation with Solicitor LeFever, contracted with Attorney Athey and Attorney Macinanti the law firm of Kegel, Kelin, Almy & Grimm "to do a complete investigation, [and] report back to the Board of Commissioners [on] whether there was any validity to the claims that were being made [by Michelle Immel] in the email."  Plaintiff's Exhibit DD, Lehman Deposition 2/22/2013, at pages 59-60.)

[77]	Plaintiff's Exhibit N, Supplemented Summary of 7/14/2009 Conversation with Wendy Chan, at page 1.

[78]	Plaintiff's Exhibit A, Chan Affidavit at ¶ 14.

[79]	Plaintiff's Exhibit M, Letter dated July 16, 2009 from Charles E. Douts, Jr., County Administrator, to Ms. Wendy Chan ("Suspension Letter") (Document 46-17), at page 1.

The July 16, 2009 suspension letter went on to state as follows:

> Information disclosed to date by you and others confirms that your conduct toward representatives of Benecon Group was, at best, an exercise of extremely poor judgment and, at worst, a violation of the [State] Ethics Act.  You were able to intercede on behalf of your husband with Benecon because of the business relationship between Benecon and the County.  Clearly, your actions placed pressure on Benecon to address the situation with their employee in some manner and you did nothing to dissuade them from doing so until after they acted.  We must take such matters very seriously and have determined that a disciplinary suspension pending completion of the investigation of this and other matters are completed.
>
> As you are aware, several other concerns have arisen involving your interactions with other County employees and raise questions of potential dishonesty and breach of confidentiality.
>
> You will be contacted to provide information on these issues in the near future.  The County will conclude its investigation into these matters as promptly as possible and advise you of its final determination at that time.[80]

Plaintiff was not issued any warnings and was not put on a performance improvement plan prior to her suspension.[81]

### Attorney Macinanti Interviews

At the County's request, Attorney Amy Macinanti[82] conducted several interviews during the days following

---

[80]     Plaintiff's Exhibit M, Suspension Letter at pages 1-2.

[81]     Plaintiff's Exhibit GG, Douts' Deposition 2/20/2013, at pages 35-36.

[82]     See footnote 76, supra.

plaintiff's suspension on July 16, 2009.[83]  Specifically, Attorney Macinanti interviewed Director of Parks James Hackett on July 17, 2009; Assistant Director of Parks Paul Weiss on July 20, 2009; and Director of Recreation Tammy Agesen on July 20, 2009.

Mr. Hackett received a written reprimand sometime near the end of May, 2009.  The subject of Attorney Macinanti's interviews was whether or not on June 18, 2009 plaintiff had disclosed to Ms. Agesen the fact that Mr. Hackett recently received a written reprimand.  Plaintiff denied ever having told Ms. Agesen anything about a personnel matter involving Mr. Hackett.

### July 21, 2009 Letter

On July 21, 2009 plaintiff hand delivered a letter to Mr. Douts, with copies to each Commissioner, which she wrote in response to the July 16, 2009 suspension letter from Mr. Douts.[84] Plaintiff's letter response states, in pertinent part:

> I am greatly dismayed that you and all three Commissioners who have constantly commended me publicly and privately about the great job I have done would put me through this upsetting experience.  Never was there the slightest criticism from any of you...

---

[83]     Plaintiff's Exhibit BB (Document 46-32), copy of written summary of interviews conducted by Amy Macinanti, at pages 1-5.

[84]     Plaintiff's Exhibit I (Document 46-13), copy of plaintiff's July 21, 2009 letter to Mr. Douts, with copies to each Commissioner, at pages 1-2.

I have greatly reduced the County's liabilities all the while being repeatedly mocked for my Asian heritage, race, and nationality by being referred to as the "Chan Dynasty." I am the only Asian Administrator in Lancaster County. You have also shared with me that some employees mock my efforts to clean up the County by referring to me as "the Princess." Discrimination, intolerance and racial hatred run deep in the County. I am retaliated against and targeted for my efforts to remedy the hostility and wrongdoing.

I absolutely deny the County's allegations against me.... When we met on July 10, 2009 in your office, you encouraged and comforted me that these issues were mere "darts" thrown at me by other employees.... You told me that there is no question about my intentions to simply do my job in the minds of the Commissioners and yourself. This suspension is a clear act of retaliation against me by the County for engaging in the protected activity of eliminating discrimination under Title VII of the Civil Rights Act of 1964....

The Director of Parks was not suspended for allowing the Rangers to illegally carry guns. The Director of Recreation and her employees were not disciplined for threatening to reveal confidential information to the press. The Director of the Youth Intervention Center wrongfully denied numerous employees benefits for years and was not disciplined. The Director of Facilities was not disciplined for defying your orders to put up a curtain to comply with federal ADA laws. The former Acting Director of HR was known throughout the County to share confidential personnel information to "anyone who would listen" but she was not disciplined. Significantly, all of the above referenced individuals are Caucasian (race white).

Curiously, my actions to correct the discriminatory and illegal practices in the County are not "raising questions of potential dishonesty and breach of confidentiality". On July 14, 2009, you and Mr. Athey both stated to me that a decision has not been made to terminate me[,] yet your secretary told me to keep in touch because I am "a sweetheart". Surely someone is dishonest in stating that a decision has not been made to terminate me....

* * *

I made it clear to you and the Commissioners that I
will always do what is legal and ethical even when
others are not happy and resist my efforts to uncover
and clean up messes in the County.  Likewise, you
acknowledged that some will be unhappy but that I will
always have your support in being honest and doing the
right thing.  Had I known that these were not your
intentions, I would not have taken this position.

* * *

Respectfully submitted,
/s/ Wendy Chan
Wendy Chan

Cc: Dennis P. Stuckey, Chairman County Commissioners
    Scott Martin, Vice-Chairman County Commissioners
    Craig Lehman, County Commissioner

### July 24, 2009 Termination

Plaintiff's employment as Director of Human Relations

for the County was terminated on July 24, 2009.[85]  A cover

letter, together with a Notice of Charges of Termination were

hand-delivered to plaintiff at County Administrator Douts'

office that afternoon.[86]

---

[85]      Plaintiff's Exhibit A, Chan Affidavit at ¶ 19; Plaintiff's
Exhibit T (Document 46-24), Employee Separation Report for Wendy Chan
submitted by Charles E. Douts, County Administrator, and dated July 30, 2009
(listing "[i]mproper conduct and ethics violation" in after "Explanation:");
Plaintiff's Exhibit O (Document 46-19), cover letter to Ms. Wendy Chan dated
July 24, 2009 re. Notice of Charges of Termination signed by Charles E.
Douts, Jr. and hand-delivered on July 24, 2009 at 3:30 PM at the Office of
Charles E. Douts, Jr. ("Chan Termination Cover Letter").

[86]      See id. at page 1; Defendants' Statement of Undisputed Material
Facts, Exhibit G (Document 44-2), copy of Termination Cover Letter and Notice
of Charges of Termination.

The Notice of Charges of Termination focusses solely on plaintiff's actions concerning the Benecon/Michelle Immel issue.[87] The Notice of Charges of Termination neither allege, nor conclude, that plaintiff violated the Pennsylvania's state ethics act.[88] Moreover, the Notice of Charges of Termination do not make any reference to any of the "other concerns...involving [plaintiff's] interactions with other County employees" which "raise[d] questions of potential dishonesty and breach of confidentiality" and which were referenced in the July 16, 2009 suspension letter.[89]

The Notice of Charges of Termination concludes by stating as follows:

> By your actions you have created a serious conflict of interest constituting an egregious violation of the County's Ethics Policy. Specifically, you misused you position as the Human Resources Director for the County, a position of trust and authority, for the apparent purpose of influencing a County vendor [(Benecon)] to take steps to resolve a conflict between one of its employees [(Michelle Immel)] and your husband's employer [(Lancaster Toyota)]. There is no other reasonable explanation for your actions. Your protestation that you were "just trying to help" the Benecon employee cannot be reconciled with the facts you have admitted.

---

[87]     See Defendants' Statement of Undisputed Material Facts, Exhibit G, Notice of Charges of Termination at pages 1-3.

[88]     See Id.

[89]     Compare Defendants' Statement of Undisputed Material Facts, Exhibit G, Notice of Charges of Termination at pages 1-3, with Plaintiff's Exhibit M, Suspension Letter at pages 1-2.

Due to the serious nature of this offense -- particularly in the context of you position as Human Resources Director -- you are hereby terminated from your Employment with the County of Lancaster.[90]

The Board of Commissioners is solely responsible for the hiring and firing of the County's management-level staff, including the Director of Human Resources. Such personnel decisions are made by majority vote of the three Commissioners.[91]

Commissioners Martin and Lehman voted to terminate plaintiff's employment. Commissioner Stuckey did not vote to terminate plaintiff's employment.[92]

### Discipline of Charles Douts

The County's ethics policy contains an "Equal Opportunity for All" provision which provides, in pertinent part, that the County's "[e]mployees are to maintain a work environment free from harassment and discrimination."[93]

In August 2010, after plaintiff's employment had been terminated, accusations were lodged against Mr. Douts by a county employee, Maggie Weidinger, who alleged that Mr. Douts

---

[90]    Defendants' Statement of Undisputed Material Facts, Exhibit G, Notice of Charges of Termination at pages 2-3.

[91]    Plaintiff's Counter[-]Statement of Material Undisputed Facts at ¶ 3.

[92]    Id. at ¶¶ 3 and 31.

[93]    Plaintiff's Exhibit K (Document 46-15), copy of Policy # 124 – Lancaster County Ethics Advisory Committee: Policy and Procedures, at page 2.

made inappropriate comments regarding individuals' race or gender or ethnicity.[94]

The County investigated these claims concerning Mr. Douts and, based upon that investigation, the Commissioners "collectively conclude[d] that [his] comments were ill-advised, improper and entirely inconsistent with the job performance of a County Administrator."  Nonetheless, Mr. Douts' employment with the County was not terminated by the Commissioners, nor was he suspended.[95]  Rather, Mr. Douts received a letter of reprimand from the Commissioners and was required to complete a six-month employee assistance program.[96]

### Event Tickets for Andrea McCue

The County's ethics policy prohibits employee conflicts of interest, which is defined to include "[a]ny benefit resulting in personal gain as a result of County employment excepting remuneration from the County earned as an employee."[97]

---

[94]     Plaintiffs' Exhibit HH (Document 46-38), Deposition of Andrea McCue taken February 25, 2013 ("McCue Deposition 2/25/2013"), at page 81.

[95]     Id. at page 81.

[96]     Plaintiffs' Exhibit X (Document 46-28), copy of two-page letter dated August 23, 2010 to Mr. Charles Douts from the Commissioners, at pages 1-2; Plaintiff's Exhibit Y (Document 46-29), copy of two-page Life Management Associates EAP Formal Company Pre-Referral concerning Charles Douts.

[97]     Plaintiff's Exhibit K (Document 46-15), copy of Policy # 124 – Lancaster County Ethics Advisory Committee: Policy and Procedures ("Ethics Policy"), at page 1.

More explicitly, the County's ethics policy states that "[g]ifts and favors extraneous to doing business, provided to County employees by any party soliciting business or doing business with the County, are prohibited.  It is the intent of this policy to prohibit acceptance of gifts for personal use."[98]

County vendors occasionally offered tickets to baseball games and other events to County employees.[99]  Ms. McCue accepted two tickets (one for herself and one for her daughter) to see Disney on Ice in Hershey, Pennsylvania.[100]  Ms. McCue was not investigated or disciplined in any manner for accepting those tickets.[101]

## DISCUSSION

### Withdrawal of Claims

In her response to Defendants' Motion for Summary Judgment, plaintiff states that she "withdraws her claims against Defendant Dennis Stuckey acting individually and withdraws [her] individual claims against Defendant Andrea McCue for civil rights [violations] under Section 1983 (Count I) and [the] Pennsylvania Human Relations Act (Count IV)."[102]

---

[98]     Plaintiff's Exhibit K, Ethics Policy, at page 3.

[99]     Plaintiffs' Exhibit HH, McCue Deposition 2/25/2013, at page 92.

[100]     Id. at pages 92 and 95.

[101]     Id. at pages 93 and 95.

[102]     Plaintiff's Response in Opposition to Summary Judgment, at page 1.

In other words, plaintiff seeks to voluntarily dismiss all claims against defendant Stuckey and to dismiss her claims against defendant McCue in Counts I and IV.

Rule 41 of the Federal Rules of Civil Procedure governs the voluntary dismissal of civil actions.  See Fed.R.Civ.P. 41.  Rule 41(a) is not the proper vehicle for dismissing individual claims within a suit.  Waris v. Mackey, 2009 U.S.Dist. LEXIS 116961, at *12 (D.N.J. December 14, 2009); Wallace v. Mercantile County Bank, 514 F.Supp.2d 776, 788 (D.Md. 2007).

Rule 41(a)(1) allows for dismissal of entire actions without prejudice prior to the first of either service of an answer, or a motion for summary judgment by the other party. Fed. R. Civ. P. 41(a)(1)(i); see Hells Canyon Preservation Council v. United States Forest Service, 403 F.3d 683, 687-689 (9th Cir. 2005).

In an action with multiple defendants, voluntary dismissal of all claims against a single defendant is permitted under Rule 41(a); however, voluntary dismissal of some, but not all claims, against a single defendant is not permitted under Rule 41(a).  See Pedrina v. Han Kuk Chun, 987 F.2d 608, 609-610 (9th Cir. 1993)(citing, among others, Young v. Wilky Carrier Corp., 150 F.2d 764, 764 (3d Cir. 1945)).

The proper procedural mechanism for dismissing less than all of the claims in an action is a motion to amend under Federal Rule of Civil Procedure 15(a).  <u>Waris</u>, 2009 U.S.Dist. LEXIS 116961, at *12-13 (citing <u>ECASH Technologies. Inc. v. Guagliardo</u>, 35 Fed.Appx. 498, 499 (9th Cir. 2002); and 9 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2362, at 413-14 (3d ed. 2008)).  Rule 41(a)(1) "does not allow for piecemeal dismissals...withdrawals of individual claims against a given defendant are governed by Fed.R.Civ.P. 15".  <u>Hells Canyon Preservation Council</u>, 403 F.3d at 687-689.

Here, plaintiff did not seek to voluntarily dismiss her action against defendants Stuckey or McCue prior to the filing of the Answer, or Defendants' Motion for Summary Judgment.  Moreover, plaintiff did not submit a stipulation of dismissal signed by all parties who have appeared.  Accordingly, Rule 41(a)(1)(A) does not apply.

However, Rule 41(a)(2) permits voluntary dismissal of an action by court order upon plaintiff's request after the filing of an answer or a motion for summary judgment "on terms the court considers proper."  Fed.R.Civ.P. 41(a)(2).

I interpret Plaintiff's Response in Opposition to include a request for voluntary dismissal of this action against

defendant Stuckey.[103]  I will grant that request and withdraw all
of plaintiff's claims against defendant Stuckey with prejudice.

Unlike her request to withdraw all claims concerning
defendant Stuckey, plaintiff seeks to dismiss two of her four
claims against defendant McCue (Counts I and IV), but to retain
the other two (Counts V and VI).

In response to Defendants' Motion for Summary
Judgment, plaintiff expressly seeks to withdraw her section 1983
equal protection and PHRA claims against defendant McCue.  I
construe that request as a request to amend the Second Amended
Complaint by dismissing Andrea McCue as a defendant in Count I
and Count IV.

Because "[t]he court should freely grant leave [to
amend] when justice so requires", Fed.R.Civ.P. 15(a)(2), and
because defendants will not be prejudiced by the withdrawal of
plaintiff's claims against defendant McCue in Count I and
Count IV, I grant plaintiff's request to amend the Second
Amended Complaint for the purpose of withdrawing those claims
against defendant McCue.  The Second Amended Complaint is deemed
amended to eliminate plaintiff's claims against defendant McCue
in Counts I and IV without further pleading.

---

[103]    See Plaintiff's Response in Opposition to Summary Judgment, at
page 1.

Accordingly, defendant Stuckey is dismissed from this action and plaintiff's only claims remaining against defendant McCue are for defamation (Count V) and false light/ invasion of privacy (Count VI).

## **Equal Protection**

Plaintiff's section 1983 claim which remains in Count I alleges discrimination by defendants based upon her race and national origin in violation of her Fourteenth Amendment right to equal protection of the laws.  Plaintiff asserts that claim against all defendants.  As explained above, plaintiff's equal protection claim against Commissioner Stuckey is withdrawn, and her Second Amended Complaint is deemed amended to eliminate her equal protection claim against Chief Clerk McCue.

Accordingly, I now address plaintiff's section 1983 equal protection claims against the County, Commissioner Lehman, Commissioner Martin, and County Administrator Douts.

"To bring a successful Equal Protection claim under § 1983, a plaintiff must prove the existence of purposeful discrimination, and demonstrate that [s]he was treated differently from similarly situated individuals."  Washam v. Klopotoski, 403 Fed. Appx. 636, 638 (3d Cir. 2010)(citing Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992); and Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)).

-47-

Defendants contend that they are entitled to summary judgment on plaintiff's section 1983 equal protection claims because plaintiff "has produced no evidence that an employee in a similar situation to hers breached ethical rules as she did."[104]

Persons are similarly situated under the Equal Protection Clause when they are alike "in all relevant aspects." Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008)(citing Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1, 12 (1992)).

To be alike in all relevant aspects does not mean they must be *identically* situated. George v. Wilbur Chocolate Co., 2010 U.S.Dist. LEXIS 41932, at *14 (E.D.Pa. Apr. 28, 2010)(Golden, J.) (emphasis added).

The alleged activities need not be precisely identical. See George, 2010 U.S.Dist.LEXIS 41932 at *14. Determining whether an individual is "similarly situated" to another individual is a case-by-case fact-intensive inquiry. Monaco v. American General Assurance Co., 359 F.3d 296, 305 (3d Cir. 2004).

Here, as described above, plaintiff produced record evidence that County Administrator Douts and Chief Clerk McCue engaged in conduct which a reasonable juror could interpret as a

---

[104]     Defendants' Brief at page 14.

violation of the County's ethics policy. Although Mr. Douts received a letter of reprimand from the Commissioners and was required to participate in an employee assistance program, the record does not suggest that either Mr. Douts' or Ms. McCue's employment was suspended without pay or terminated based upon their conduct.

Mr. Douts (County Administrator) and Ms. McCue (Chief Clerk) held positions within the County workforce which were not identical to plaintiff (Director of Human Resources). Nonetheless, like plaintiff, Mr. Douts and Ms. McCue both held upper-level management positions with the County and answered to the County Commissioners. Importantly, defendants have not suggested, or presented record evidence demonstrating, that the County ethic's policy which they contend plaintiff violated, differs from the ethics policy applicable to Mr. Douts, Ms. McCue, or any other County employee.

Accordingly, defendants argument that they are entitled to summary judgment in their favor on plaintiff's section 1983 equal protection claim because plaintiff "produced no evidence that an employee in a similar position to hers breached ethical rules as [plaintiff] did" is unavailing. Therefore, I deny the Motion with respect to plaintiff's section 1983 equal protection claim in Count I on that ground.

## Title VII Disparate Treatment

Plaintiff asserts a claim pursuant to Title VII against defendant County of Lancaster in Count II of the Second Amended Complaint.

Title VII "prohibits employers from discriminating against individuals on the basis of their race, color, religion, sex, or national origin." Burton v. Teleflex Incorporated, 707 F.3d 417, 426 n.7 (3d Cir. 2013)(citing 42 U.S.C. § 2000e—2(a)(2)).

Plaintiff alleges that she was subject to disparate treatment on the basis of her sex,[105] race, and national origin.[106] Claims brought pursuant to Title VII (and parallel claims pursuant to the PHRA) alleging, but having no direct

---

[105]        Plaintiff's Memorandum at page 17.

Although Plaintiff's Memorandum suggests that she is asserting a Title VII disparate treatment claim based upon sex, plaintiff's own statements in the record undermine such a disparate treatment claim.

For example, in paragraph 1 of her affidavit, plaintiff states, "I have protected class status for race, color, ethnicity, and ancestry"; it makes no mention of her sex. (Plaintiff's Exhibit A, Chan Affidavit at ¶ 1.) Similarly, in paragraph 27 of her affidavit, plaintiff states, in pertinent part, that she was "subjected to disparate and different and disparate treatment based on Asian Race and Nationality", not her sex. (Id. at ¶ 27.)

Moreover, when plaintiff states that "[s]imilarly situated directors and managers were accorded preferential treatment", the list which follows identifies both male and female County employees as comparators. (Chan Affidavit at ¶27a.-h.)

[106]        Plaintiff's Memorandum at page 17.

evidence[107] of, disparate treatment are traditionally analyzed under the three-step analysis set forth under the line of cases decided by the United States Supreme Court in <u>McDonnell Douglas</u> <u>Corp. v. Green</u>, 411 U.S. 792, 802-804, 93 S.Ct. 1817, 1824-1825, 36 L.Ed.2d 668, 677-679 (1973); <u>see</u> <u>Burton</u>, 707 F.3d at 425-426.

Under <u>McDonnell Douglas</u> and its progeny, a plaintiff must initially establish a prima facie case of discrimination. Upon a prima facie showing, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. If a defendant carries its burden of production, the burden shifts back to plaintiff to demonstrate that defendant's articulated reason was not the actual reason, but rather a pretext for discrimination. <u>Burton</u>, 707 F.3d at 426; <u>Simpson v. Kay Jewelers</u>, 142 F.3d 639, 644 (3d Cir. 1998);

---

[107]       Defendants contend that plaintiff has not produced any direct evidence of discrimination based upon race, national origin, or sex, and, accordingly, plaintiff must establish her claim through circumstantial evidence under the <u>McDonnell-Douglas</u> burden-shifting framework. (Defendants' Brief at pages 5-6.)

        Although plaintiff conclusorily asserts that she "presented direct evidence of sex discrimination" (Plaintiff's Memorandum at page 17), she makes that assertion after stating that she "presented evidence of gender and race discrimination under Title VII" and after citing a Third Circuit case with a citing parenthetical for <u>McDonnell-Douglas</u> itself. Moreover, plaintiff does not identify the direct evidence to which she refers. (Plaintiff's Memorandum at page 17.)

        Review of plaintiff's discussion of her Title VII claim demonstrates that she is pursuing that claim under a burden-shifting approach, rather than a direct evidence approach. (<u>See</u> Plaintiff's Memorandum at pages 17-20.) Accordingly, this Opinion considers plaintiff's disparate treatment and retaliation claims under the <u>McDonnell-Douglas</u> burden-shifting framework.

<u>Waldron v. SL Industries, Inc.</u>, 56 F.3d 491, 494 (3d Cir. 1995).[108]

To establish a prima facie case in a Title VII discrimination action such as this, a plaintiff must show that she: (1) is a member of a protected class; (2) is qualified for the position; and (3) suffered an adverse employment decision; (4) under circumstances that give rise to an inference of unlawful discrimination. <u>Waldron</u>, 56 F.3d at 494.

To establish a prima facie case of discrimination at the summary judgment stage, plaintiff's record evidence "must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case." <u>Burton</u>, 707 F.3d at 426 (quoting <u>Duffy v. Paper Magic Group</u>, 265 F.3d 163, 167 (3d Cir. 2001)). Plaintiff has done so here.

Plaintiff provided record evidence on each of the four factors required to establish a prima facie case in a Title VII discrimination action, specifically: (1) she is an Asian female born in Taiwan; (2) she was hired from a pool of more than 60 applicants based upon her performance in multiple interviews and her experience in human resource positions at the state

---

[108]    The United States Court of Appeals for the Third Circuit urges caution in granting summary judgment to an employer-defendant when its intent is at issue, particularly in discrimination and retaliation cases. <u>Goosby v. Johnson & Johnson Medical, Inc.</u>, 228 F.3d 313, 321 (3d Cir. 2000) ("In an employment discrimination case 'a trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue.'" (quoting <u>Gallo v. Prudential Residential Services, Ltd.</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)).

level; (3) she was suspended without pay and, eight days later,
fired from the position of Director of Human Resources; and
(4) the person hired to replace plaintiff as Director of Human
Resources was a non-Asian, white male.  Accordingly, plaintiff
has produced record evidence sufficient to establish a prima
facie case of disparate treatment.[109]

Because plaintiff has satisfied her burden of
establishing her prima facie case for race and national-origin
discrimination, "the burden of production [now] shifts to the
defendant[s] to offer a legitimate non-discriminatory
[justification] for the adverse employment action."  Burton, 707
F.3d at 426 (quoting Smith v. City of Allentown, 589 F.3d 684,
691 (3d Cir. 2009)) (third alteration in original).

Defendants' burden of producing a legitimate non-
discriminatory reason is "'relatively light' and is satisfied if
the employer provides evidence, which, if true, would permit a
conclusion that it took the adverse employment action for a non-
discriminatory reason."  Burton, 707 F.3d at 426 (quoting
Tomasso v. Boeing Company, 445 F.3d 702, 706 (3d Cir. 2006)).
At this stage, "the defendant need not prove that the
articulated reason actually motivated its conduct."  Burton,

---

[109]        Plaintiff's Memorandum at page 17.

707 F.3d at 426 (quoting Shellenberger v. Summit Bancorp., Inc., 318 F.3d 183, 189 (3d Cir. 2003)).

Defendants have carried their burden by offering a legitimate non-discriminatory reason for plaintiff's unpaid suspension and the subsequent termination of her employment. Specifically, defendants contend that plaintiff was not suspended or terminated because of her race or sex, but rather that she was suspended and subsequently fired because of her actions concerning the Benecon/Michelle Immel situation.

The deposition testimony and sworn affidavits of Commissioner Lehman and Commissioner Martin represent record evidence which, if believed, would permit a reasonable factfinder to conclude that she was suspended and fired because of her conduct concerning Benecon and Michelle Immel, and not because of her status as a member of a statutorily-protected class. Therefore, defendants have carried their burden of production under the McDonnell-Douglas framework.

Accordingly, the burden of production shifts back to plaintiff for her to "provide evidence from which a factfinder could reasonably infer that the [defendants'] proffered reason is merely a pretext for discrimination." Burton, 707 F.3d at 426 (citing Fuentes v. Perskie, 32 F.3d 759, 764-765 (3d Cir. 1994)). "The plaintiff must make this showing of pretext to defeat a motion for summary judgment." Id. at 426-427.

To make the requisite showing of pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Burton, 707 F.3d at 427 (quoting Fuentes, 32 F.3d at 764).

If plaintiff comes forward with "sufficient evidence to allow a finder of fact to discredit the employers proffered justification, she need not present additional evidence of discrimination beyond her prima facie case to survive summary judgment." Burton, 707 F.3d at 427 (quoting Fuentes, 32 F.3d at 764).

In other words, "plaintiff is...not required to produce direct evidence of discriminatory intent to demonstrate pretext and survive a motion for summary judgment." Burton, 707 F.3d at 427.

Here, plaintiff contends that the reason stated for her suspension and termination -- namely, the purported breach of the County's ethics policy through her conduct toward Benecon and Michelle Immel -- was pretext for discrimination. Specifically, plaintiff contends, and has provided record evidence suggesting, that defendant's proffered rationale is not worthy of credence because other non-Asian management-level

employees of the County engaged in conduct violative of the County's ethics policy but were not fired, or suspended without pay, as a result of their unethical conduct.

Because plaintiff has presented some record evidence from which a reasonable factfinder could infer that defendants' proffered legitimate non-discriminatory reason is unworthy of credence, and because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge", <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105, 122 (2000), I conclude that defendants are not entitled to summary judgment based upon the legitimate non-discriminatory reason offered as the basis for plaintiff's termination.

## **Retaliation**

Plaintiff claims that she was retaliated against in violation of Title VII for "reporting sex based harassment and discrimination."[110] Plaintiff also claims that she was retaliated against in violation of the Americans with Disabilities Act "for acting to correct, remediate and accommodate disabled employees."[111]

---

[110] Plaintiff's Memorandum at page 17.

[111] Plaintiff's Memorandum.

ADA retaliation claims are analyzed under the same framework as Title VII claims.  <u>Griffin</u>, 453 Fed.Appx. at 253 n.6 (citing <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 500-501 (3d Cir. 1997)); <u>see</u> <u>Detweiler v. Clark Metal Products, Co.</u>, 2010 U.S.Dist. LEXIS 36896, at *68 (W.D.Pa. March 19, 2010)(Mitchell, M.J.)(citing <u>Gaul v. Lucent Technologies, Inc.</u>, 134 F.3d 576, 580  (3d Cir. 1998)(ADA), and <u>Rinehimer v. Cemcolift, Inc.</u>, 292 F.3d 375, 382 (3d Cir. 2002)(PHRA), adopted by 2010 U.S.Dist. LEXIS 36977 (W.D.Pa. April 12, 2010)(Ambrose, J.).

To establish her prima facie case of retaliation, plaintiff must provide evidence that: (1) she engaged in a protected activity; (2) the employer took an adverse employment action against her;[112] and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.  <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 340-41 (3d Cir. 2006); <u>Aman v. Cort Furniture Rental Corporation</u>, 85 F.3d 1074, 1085 (3d Cir. 1996).

"Title VII defines a protected activity as, inter alia, an instance where an employee has opposed a discriminatory employment practice based upon an individual's race, color, religion, sex, or national origin."  <u>Eldridge v. Municipality of</u>

---

[112]    Defendants do not dispute that plaintiff's suspension without pay and subsequent firing were adverse employment actions.

Norristown, 2013 U.S.App. LEXIS 4560, at *6 (3d Cir. March 6, 2013)(citing 42 U.S.C. §§ 2000e-2(a)(1), and 2000e-3(a)).

The ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act." 42 U.S.C. § 12203(a). Accordingly, a plaintiff who complains to his employer that the ADA has been violated is protected from retaliation under the Act. See Gharzouzi v. Northwestern Human Services Of Pennsylvania, 225 F.Supp.2d 514, 540 (E.D.Pa. May 7, 2002)(Van Antwerpen, J.)(citing Barber v. CSX Distribution Services, 68 F.3d 694, 701-02 (3d Cir. 1995)).

The activity or circumstances a plaintiff complains about need not actually be in violation of the ADA. However, in order for a complaint to constitute protected activity under the ADA, plaintiff must have a good faith, reasonable belief that an ADA violation occurred. Aman, 85 F.3d at 1085.

In determining whether a specific complaint or request constitutes protected activity, courts consider the content of the complaint, rather than its form. Barber, 68 F.3d at 702. Accordingly, a complaint need not be written or formal. Id. However, general claims of unfair treatment are not statutorily protected activity. Id. at 701-702.

"Causation can be shown through temporal proximity between the protected activity and the adverse employment

action; an intervening pattern of antagonism; or the evidence taken as a whole." Griffin v. Municipality of Kingston, 453 Fed.Appx. 250, 253 n.6 (3d Cir. 2011) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000), and Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997)).

Here, the record evidence would permit a reasonable factfinder to conclude that plaintiff has established a prima facie case of retaliation in violation of Title VII. Specifically, the record evidence, taken in the light most favorable to plaintiff as the non-moving party, suggests that plaintiff hand delivered a letter to County Administrator Douts (with copies to the Commissioners) on July 21, 2009, five days after she was suspended.

Plaintiff's July 21, 2009 letter expressly accuses Mr. Douts and the Commissioners of suspending plaintiff in retaliation for plaintiff's efforts to oppose "intolerance and racial hatred"; [113] such an allegedly-retaliatory suspension would itself be a violation of Title VII. Accordingly, plaintiff's July 21, 2009 letter constitutes Title VII-protected conduct. However, plaintiff's July 21, 2009 letter does not expressly state or reasonably imply a charge of conduct in violation of

---

[113] Plaintiff's Exhibit I, copy of plaintiff's July 21, 2009 letter to Mr. Douts, with copies to each Commissioner.

the ADA and, and accordingly, does not support plaintiff's ADA retaliation claim.

Plaintiff's employment as Director of Human Resources was terminated on July 24, 2009. The three-day period between plaintiff's July 21, 2009 and her termination is sufficiently close in temporal proximity to permit a reasonable factfinder to conclude that plaintiff's record evidence supports a prima facie case of retaliation in violation of Title VII.

Plaintiff has produced record evidence that she attempted to have a curtain installed in a handicap-accessible restroom on the first floor of the county courthouse. That stall had "handicapped bars on the side" but "did not have a door at all."[114]

However, plaintiff testified that, while she thought the curtain should be installed to provide privacy, she did not believe that it was required by the ADA.[115] Accordingly, a reasonable factfinder could not conclude that plaintiff had a good faith belief that her efforts concerning the privacy curtain were remedying, or reporting to the County, a violation

---

[114]     Plaintiff's Exhibit CC, Chan Deposition 1/31/2013 at page 141; see Defendants' Supplemental Statement of Undisputed Material Facts, Exhibit J , copy of chain of email communications beginning May 7, 2009 and ending May 8, 2009 amongst Wendy Chan, Keith Harner, and Charlie Douts, with copies to Donald E. LeFever.

[115]     Plaintiff's Exhibit CC, Chan Deposition 1/31/2013 at pages 141-142.

of the ADA, and those efforts do not constitute protected conduct.  See <u>Aman</u>, 85 F.3d at 1085.

Plaintiff stated in her affidavit that, at some time during her seven-month tenure as Director of Human Resources, she recommended to Mr. Douts and Commissioner Stuckey that a handle bar, or grab bar, be installed in a stall in the public restroom of the county courthouse after she learned that a disabled employee who used a wheelchair had fallen.[116]

However, plaintiff does not specify, and the record does not demonstrate, at what point during plaintiff's seven-month tenure this recommendation was made.  Plaintiff's record evidence would not permit a reasonable factfinder, without simply speculating, to infer a causal relationship between plaintiff's grab-bar recommendation and her subsequent suspension and termination.  Therefore, plaintiff does not establish a prima facie case based upon that recommendation.

Plaintiff states that Jennifer Stoltz was an injured park ranger and the only female employee in the County's Parks Department who was allegedly subjected to to sex discrimination and harassment in the Parks Department.  Plaintiff further stated that she "attempted to remediate the hostility [by]

---

[116]        Plaintiff's Exhibit A, Chan Affidavit at ¶ 9c.

removing [Ms. Stoltz from the Parks Department] and reassigning Ms. Stoltz to an open position in the Sheriff's Department."[117]

Although plaintiff's statement could lead a reasonable factfinder to infer that plaintiff believed, in good faith, that she was working to oppose or remedy conduct prohibited by Title VII (i.e., sexual harassment), neither Plaintiff's Memorandum, nor her statements in the record, explain or identify what, if any, actions she took concerning Ms. Stoltz that plaintiff could believe, in good faith, constituted ADA-protected activity. Therefore, plaintiff does not demonstrate a prima facie case of ADA retaliation based upon any efforts on behalf of Ms. Stoltz.

For these reasons, I conclude that plaintiff's record evidence supports a prima facie case of retaliation in violation of Title VII, but not the ADA. Accordingly, I grant Defendants' Motion for Summary Judgment with respect to plaintiff's ADA retaliation claim.

Because plaintiff sets forth a prima facie case of retaliation in violation of Title VII, the burden shifts to defendants to provide a non-discriminatory reason for the adverse employment action. If the employer-defendant provides evidence of a non-discriminatory reason for the adverse action, the burden then shifts back to the plaintiff to provide evidence

---

[117]     Plaintiff's Exhibit A, Chan Affidavit at ¶ 8.

that the given reason is pretextual.  Estate of Olivia ex rel.
McHugh v. New Jersey, 604 F.3d 788, 798 n.14 (3d Cir. 2010);
Moore, 461 F.3d at 342.

As previously discussed in this Opinion, defendants
proffered a legitimate non-discriminatory reason for plaintiff's
suspension and termination, and plaintiff provided record
evidence creating an issue of fact regarding pretext.
Therefore, I deny Defendants' Motion for Summary Judgment with
respect to plaintiff's Title VII retaliation claim.

### Hostile Work Environment

Plaintiff asserts a hostile work environment claims
against defendant County of Lancaster pursuant to Title VII in
Count II, and pursuant to the PHRA against the County and
defendants Martin, Lehman and Douts in Count IV.

Defendants contend that they are entitled to judgment
in their favor on plaintiff's hostile work environment claims
because: (1) no county employee ever called her "Chan Dynasty",
"Princess", or "the Princess" in her presence and she does not
even know if those comments were made by any county employee;
(2) plaintiff did not offer any evidence that she finds those
comments offensive; (3) even if county employees referred to
plaintiff as "Chan Dynasty" or "Princess", plaintiff has not
provided record evidence that any such references rose to the
level of severe or pervasive harassment necessary to establish a

hostile work environment; and finally (4) plaintiff never notified defendants about any such harassment by county employees.[118]

Plaintiff's Memorandum responds that she "presented evidence that she was subjected to derogatory name calling because of her race, sex, and nationality...[and] that Facilities Director Keith Harner subjected her to resistance, refusal, and blatant contempt that interfered with her ability to perform her job duties."[119] Plaintiff's Memorandum further asserts that the "individual defendants joined in the harassment."[120]

To establish a prima facie case of hostile work environment under Title VII, a plaintiff must prove that: (1) she suffered intentional discrimination because of her protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006).

Courts must consider the totality of the circumstances when determining whether discrimination was severe or pervasive.

---

[118]       Defendants' Brief at pages 11-12.

[119]       Plaintiff's Memorandum at page 19.

[120]       Id.

This includes "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662, 676 (1998)(quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295, 302-303 (1993)).

Title VII is violated when the workplace is permeated with "discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21, 114 S.Ct. at 371, 126 L.Ed.2d at 302-303. Utterance of an "epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." Id.

The number of incidents of harassment is but one factor to be considered in the totality of the circumstances. "A Title VII plaintiff does not prove racial harassment or the existence of a hostile working environment by alleging some 'magic' threshold number of incidents." West v. Philadelphia Electric. Co., 45 F.3d 744, 757 (3d Cir. 1995)(quoting Daniels v. Essex Group, Inc., 937 F.2d 1264, 1275 (7th Cir. 1991)).

Although the discussion of her hostile work environment claim in Plaintiff's Memorandum does not expressly state upon what "derogatory name calling" her claim is based,

Plaintiff's Counter[-]Statement of Undisputed Material Facts states that she "was referred to as Chan Dynasty and Princess[,] mocking her Asian race and nationality."[121]   In her affidavit plaintiff states that she "was commonly referred to as 'Chan Dynasty' and 'Princess.'"[122]

During defendant's deposition of plaintiff taken on January 31, 2013, defendants' counsel, Anthony T. Bowser,

---

[121]         Plaintiff's Counter[-]Statement of Undisputed Material Facts at ¶ 31.

[122]         Plaintiff's Exhibit A, Chan Affidavit at ¶ 12.

         In support of this assertion, plaintiff, in her affidavit, cites a one-page excerpt of the deposition testimony of a Lancaster county park ranger Ryan Gajecki taken on  December 22, 2009 in connection with another case against the County where Ms. Chan's counsel, Attorney Shapiro, represented the plaintiff-employee:

         Q[unidentified counsel]: "Have you ever heard of Jim Hackett referring to Wendy Chan as the Chan dynasty?"

         A[park ranger]:  I heard the term.  I don't know where it came from.

         Q[unidentified counsel]:  You have heard the term Chan dynasty?

         A[park ranger]: Yes.

         There is nothing more to that exchange that relates to any derogatory reference toward Ms. Chan.  (See Plaintiff's Exhibit J, Deposition of Ryan Robert Gajecki taken December 22, 2009 in Jennifer Stoltz v. County of Lancaster, et al., case no. 08-cv-05622 (E.D.Pa., Stengel, J.) at page 116.)

         In short, Ranger Gajecki's testimony provided and cited by plaintiff does not support a reasonable inference that Ms. Chan was "commonly" referred to as Chan Dynasty.  Indeed, Ranger Gajecki did not testify that he had heard Mr. Hackett (Director of Parks for the County) refer to plaintiff as Chan Dynasty.  Rather, Ranger Gajecki only stated that he had heard of the term, but was not sure where it came from.

Esquire, questioned plaintiff concerning the purported Chan

Dynasty and Princess references:[123]

>[Attorney Bowser:]  Who do you believe called you
>that?
>
>[Plaintiff:] Other people, the -- who I believe called
>me that?
>
>[Attorney Bowser:]  Yes.
>
>[Plaintiff:]  Probably the facilities folks, probably
>other department heads.  I don't know.  Mr. Douts was
>never clear about who called me that, he just said
>[that] people are saying this.  Not one person, but
>people.
>
>[Attorney Bowser:]  Did anyone ever call you that to
>your face?
>[Plaintiff:]  No.
>
>[Attorney Bowser:]  What reports did you make
>regarding this conduct?
>
>[Plaintiff:]  I did not make any reports because it
>was actually told to me by my supervisor.
>
>[Attorney Bowser:]  Okay.  You understood, though,
>that if something were making you uncomfortable, you
>could have gone directly to the commissioners if need
>be; is that correct?
>
>[Plaintiff:]  Yes.
>
>[Attorney Bowser:]  So at any time did you go to the
>commissioners and say, I am being called the Chan
>Dynasty or Princess, and I think that's related to my
>national origin?
>
>[Plaintiff:]  I did not get the opportunity to do so.
>
>[Attorney Bowser:]  Okay.
>
>[Plaintiff:]  Shortly thereafter, I was suspended.

---

[123]     See Defendants' Statement of Undisputed Material Facts,
Exhibit I, Chan Deposition 1/31/2013 at pages 173-175.

[Attorney Bowser:] Okay. So no time during your tenure until just prior to your suspension, did you ever have any indication that you were being called the Chan Dynasty or Princess?

[Plaintiff:] I can't speculate as to what other people said or didn't say. This was not made known to me until prior to my suspension.[124]

The fact that plaintiff was not present when she anyone referred to her as Chan Dynasty or Princess does not render such references irrelevant to the court's assessment of her hostile work environment claim. Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997).

"Just as a racial epithet need not be directed at a plaintiff in order to contribute to a hostile work environment, ...the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment." Id. (citing Rodgers v. Western-Southern Life Insurance Co., 12 F.3d 668, 673, 675 (7th Cir. 1993); and Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir. 1997)(internal citation omitted).

Plaintiff's Memorandum argues, in support of her hostile work environment claim, that "Facilities Director Keith Harner subjected her to resistance, refusal, and blatant

---

[124]    Defendants' Statement of Undisputed Material Facts, Exhibit I, Chan Deposition 1/31/2013 at pages 173-175.

contempt that interfered with her ability to perform her job duties."[125]

Plaintiff does not explain how, or cite to record evidence demonstrating that, any "resistance" or "blatant contempt" from Mr. Harner toward plaintiff was related to any her Title VII protected-class status.

The only record evidence of a communication between plaintiff and Mr. Harner concerns plaintiff's efforts to have a curtain installed on a handicap-accessible bathroom stall which did not have a door.[126]

Even when viewed in the light most favorable to plaintiff, and with all reasonable inferences drawn in her favor, as required by the applicable standard of review, the record evidence concerning plaintiff's interaction with Keith Harner does not provide support for plaintiff's claim of a hostile work environment based upon her race or national origin.

Because plaintiff has not provided sufficient record evidence to demonstrate that her workplace was permeated with "discriminatory intimidation, ridicule, and insult," Harris,

---

[125]        Plaintiff's Memorandum at page 19.

[126]        Defendants' Supplemental Statement of Facts, Exhibit J (Document 55-12), copy of chain of email communications beginning May 7, 2009 and ending May 8, 2009 between Wendy Chan, Keith Harner, and Charlie Douts, with copies to Donald E. LeFever.

        Review of these email communications does not demonstrate, or support a reasonable inference of, contempt or animosity relating to plaintiff's race or national origin.

510 U.S. at 21, 114 S.Ct. at 371, 126 L.Ed.2d at 302-303,
I grant Defendants' Motion for Summary Judgment concerning
plaintiff's hostile work environment claim.

**Associational Discrimination**

Count III of the Second Amended Complaint asserts a
claim against defendant County of Lancaster for violation of the
Americans with Disabilities Act.

Plaintiff's Memorandum asserts that she "presented
evidence  that she was treated differently and disparately
because of her association with disabled employees and in
retaliation for acting to correct, remediate, and accommodate
disabled employees."[127]  Then, after reviewing the ADA's anti-
retaliation provision, 42 U.S.C. § 12203(a), Ms. Chan concludes
her discussion of her ADA claim in Plaintiff's Memorandum by
stating that she "presented evidence for summary judgment
granted to the plaintiff for her claims of associational
discrimination."[128]

Although plaintiff used the phrase "associational
discrimination" in Plaintiff's Memorandum, it is clear from both
Plaintiff's Memorandum and the Second Amended Complaint, that

---

[127]     Plaintiff's Memorandum at page 20.

[128]     Plaintiff's Memorandum at page 20.

the essence of her ADA claim is a claim for retaliation, not an

associational discrimination.[129]

The anti-discrimination provision of the ADA provides,

in pertinent part, that

> the term "discriminate against a qualified individual
> on the basis of disability" includes—...(4) excluding
> or otherwise denying equal jobs or benefits to a
> qualified individual *because of the known disability*
> *of an individual with whom the qualified individual is*
> *known to have a relationship or association*[.]

42 U.S.C. § 12112(b)(4)(emphasis added).

"The Interpretive Guidelines to the ADA provide that

an employer may not make decisions based on the 'belief that the

[employee] would have to miss work' in order to take care of a

disabled person." <u>Tyndall v. National Education Centers, Inc.</u>,

31 F.3d 209, 214 (4th Cir. 1994)(quoting 29 C.F.R. § 1630).

The United States Court of Appeals for the Third

Circuit has stated that,

> [u]nder the association provision, there is a material
> difference between firing an employee because of a
> relative's disability and firing an employee because

---

[129] Plaintiff's counsel confirmed as much during oral argument,
though she did so tentatively. Following the presentation of plaintiff's
argument in response to defendants' Motion, the following exchange occurred:

> [The court:] All right, Attorney Shapiro, you don't have to go
> back to the podium, but is the essence of you ADA claim a
> retaliation claim and not really an associational discrimination
> claim?

> [Attorney Shapiro:] Probably, your Honor.

Transcript of Oral Argument held May 13, 2013 at page 42.

of need to take time off to care of the relative. The
statute clearly refers to adverse employment actions
motivated by the 'known disability of an individual'
with whom an employee associates, as opposed to
actions occasioned by the association.

Erdman v. Nationwide Insurance Company, 582 F.3d 500, 510

(3d Cir. 2009).

In Erdman, the Third Circuit Appeals Court noted

certain other circumstances under which a plaintiff might

establish an associational discrimination claim:

(1) termination based on a disabled relative's
perceived health care costs to the company; (2)
termination based on fear of an employee contracting
or spreading a relative's disease; and   (3)
termination because an employee is somewhat distracted
by a relative's disability, yet not so distracted that
he requires accommodations to satisfactorily perform
the functions of his job.

582 F.3d 511 n.7 (citing Larimer v. International Business

Machines Corp., 370 F.3d 698, 700 (7th Cir. 2005)).

Plaintiff's claim against the County for violation of

the Americans with Disabilities Act clearly rests upon the

theory that she was fired in retaliation for her efforts, on

behalf of disabled individuals, to have a privacy curtain and

grab-bar installed in certain public restrooms in the county

courthouse.  Plaintiff Memorandum does not advance, and the

record evidence does not support a claim based upon, the theory

that that her employment was suspended and then terminated

because of the known disability of another individual.

Accordingly, to the extent that plaintiff asserts an associational discrimination claim under the Americans with Disabilities Act, I grant Defendants' Motion for Summary Judgment with respect to such claim.

## Pennsylvania Human Relations Act

In addition to her federal statutory employment discrimination claims against defendant County of Lancaster under Title VII and the Americans with Disabilities Act (Counts II and III, respectively), plaintiff also alleged violations of the Pennsylvania Human Relations Act against the County, as well as each individual defendant.

As explained above, plaintiff withdraws all of her claims against defendant Stuckey and plaintiff's complaint alleging equal protection and PHRA claims against defendant McCue is deemed amended to eliminate those claims.  Therefore, all tht remains in Count IV of plaintiff's Second Amended Complaint are plaintiff's PHRA claims against the County, and against defendants Martin, Lehman, and Douts.

The PHRA is generally interpreted in accordance with Title VII and the ADA.  Gagliardo v. Connaught Laboratories, 311 F.3d 565 (3d Cir. Pa. 2002)(PHRA); Dici v. Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996)(Title VII).  Accordingly, the above discussion concerning plaintiff's Title VII and ADA claims

against the County applies to, and results in the same outcome

for, plaintiff's parallel PHRA claim against the County.

However, Section 955(e) of the PHRA, 42 P.S. § 955(e),

contemplates individual liability under the PHRA where it would

not be available under the federal statutes.  <u>Dici</u>, 91 F.3d

at 552.

The section of the PHRA defining "unlawful

discriminatory practices" states that

> [*i*]*t shall be an unlawful discriminatory*
> *practice...[f]or any person, ...or employee, to aid,*
> *abet*, incite, compel or coerce *the doing of any act*
> *declared by this section to be an unlawful*
> *discriminatory practice*, or to obstruct or prevent any
> person from complying with the provisions of this act
> or any order issued thereunder, or to attempt,
> directly or indirectly, to commit any act declared by
> this section to be an unlawful discriminatory
> practice.

42 P.S. § 955(e)(emphasis added).

An individual defendant who is a supervisory employee

may be held liable pursuant to the PHRA -- specifically,

43 P.S. § 955(e) -- under an aiding and abetting or accomplice

theory of liability.  <u>Holocheck v. Luzerne County Head Start</u>,

<u>Inc.</u>, 385 F.Supp.2d 491, 496-497 (M.D.Pa. 2005)(Vanaskie, C.J.);

<u>Clinkscales v. The Children's Hospital of Philadelphia</u>,

2007 U.S.Dist. LEXIS 83930, *24-26 (E.D.Pa. November 9, 2007)

(Kauffman, J.).  Only supervisory employees, not co-workers, may

be held liable under § 955(e), on the theory that only the

former can share the discriminatory purpose and intent of the employer that is required for aiding and abetting.  Bacone v. Philadelphia Housing Authority, 2001 WL 748177, *2 (E.D.Pa. June 27, 2001)(O'Neill, S.J.).

Under the aiding and abetting provision of the PHRA, a plaintiff may assert claims for individual liability against persons who "bear responsibility for implementing an allegedly discriminatory practice."  Hollinghead v. City of York, ___ F.Supp.2d ___, 2012 WL 6192969, at *12 (M.D.Pa. December 12, 2012)(Conner, J.).

For the reasons expressed previously in this Opinion, plaintiff's ADA claim against the County in Count II does not survive summary judgment.  Accordingly, because plaintiff has not properly established disability discrimination, she has not demonstrated that Commissioner Lehman, Commissioner Martin, or County Administrator Douts aided or abetted such discrimination.

However, it is undisputed that County Administrator Douts was plaintiff's direct supervisor and who informed plaintiff, through his two cover letters, of her suspension and subsequent termination.  Moreover, it is undisputed that Commissioner Lehman and Commissioner Martin provided the two votes necessary to secure plaintiff's termination as Director of Human Resources.

If, at trial, the County is found to have
discriminated against plaintiff by suspending her without pay
and subsequently firing her, defendants Martin, Lehman, and
Douts may be held liable under the PHRA on an aiding and
abetting theory as the individuals who bear responsibility for
implementing such discrimination.  See Hollinghead,
___ F.Supp.2d at ___, 2012 WL 6192969, at *12.

Accordingly, I deny the Motion to the extent that it
seeks summary judgment in favor of defendant County of
Lancaster, and individual defendants Martin, Lehman, and Douts.

## Defamation and False Light/Invasion of Privacy

Plaintiff asserts a claim of defamation against
defendants Martin, Lehman, Douts, and McCue in Count V, and for
false light/invasion of privacy in Count VI, of the Second
Amended Complaint.

Defendants contend that they are entitled to summary
judgment on plaintiff's defamation and false light claims
because plaintiff admitted that the alleged statements
underlying those claims are, in fact, true.[130]

In response to Defendants' Motion for Summary
Judgment, plaintiff argues that the Motion should be denied with
respect to her defamation and false light/invasion of privacy

---

[130]    Defendants' Brief at page 15 (citing Defendants' Statement of
Facts, Exhibit I, Chan Deposition 1/31/2013 at pages 242-249.)

claims and asserts that she "presented evidence that Defendants published false and misleading statements about the plaintiff that were offensive, harmful and deterred others from associating with her[, thereby] causing her lost employment opportunities, financial harm, and like damages."[131]

Plaintiff further asserts that she "presented evidence that the misstatements were published to Lancaster County staff, employees and [the] community at large by [a] front page news article shouting that the Former HR Director Wendy Chan was FIRED in seven short months causing her ridicule and disgrace."[132]

To prove a claim of defamation, the plaintiff must show the following:

> (1) The defamatory character of the communication[;]
> (2) Its publication by the defendant[;] (3) Its
> application to the plaintiff[;] (4) The understanding
> by the recipient of its defamatory meaning[;] (5) The
> understanding by the recipient of it as intended to be
> applied to the plaintiff[;] (6) Special harm resulting
> to the plaintiff from its publication[; and] (7) Abuse
> of a conditionally privileged occasion.

42 Pa.C.S.A. § 8343.

Pennsylvania has adopted the definition of false light invasion of privacy from the Restatement (Second) of Torts.

---

[131]     Plaintiff's Memorandum at pages 21-22.

[132]     Id. at page 22.

<u>Vogel v. W.T. Grant Co.</u>, 458 Pa. 124, 129-130, 327 A.2d 133,

135-36 (1974).  The Restatement provides:

> One who gives publicity to a matter concerning
> another that places the other before the public
> in a false light is subject to liability to the
> other for invasion of his privacy, if (a) the
> false light in which the other was placed would
> be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in
> reckless disregard as to the falsity of the
> publicized matter and the false light in which
> the other would be placed.

Restatement (Second) of Torts § 652E.

I characterize the two above quotations from

Plaintiff's Memorandum as assertions because her discussion of

her defamation and false light claims does not (beyond referring

to a newspaper article) provide any record citation for (much

less expressly state) the specific statement(s), speaker, or

time, place, and manner of publication, which provide the basis

for those claims.

Plaintiff's Exhibit P[133] is a photocopy of a front-page

newspaper article written by P.J. Reilly and published on

Wednesday, August 5, 2009 which is entitled, "County (again)

seeking HR chief".  The subtitle of the article reads "Sources

said that Wendy Chan, 33, was fired from the $90,000-a-year

position after just seven months on the job."  The body of the

article repeats the subtitle and then states that, "[c]iting a

---

[133]  <u>See</u> Document 46-20.

desire to keep personnel issues confidential, county adminis-
trator Charlie Douts declined to discuss the matter, but he
confirmed that Chan's last day was July 24.  Commissioners
chairman Dennis Stuckey likewise declined to comment."[134]

Plaintiff herself stated that her employment as
Director of Human Resources was terminated July 24, 2009 after
she first began work in that position on January 5, 2009
(approximately seven months prior).  Moreover, plaintiff does
not contend, and has not presented record evidence demonstrating
that, any of the other factual statements in the August 5, 2009
newspaper article are false.  Nowhere does the August 5, 2009
article state, or suggest, that plaintiff's employment was
terminated because of any unethical conduct (much less attribute
such an express or implied statement to defendants Martin,
Lehman, Douts, or McCue).

Accordingly, to the extent that plaintiff's defamation
and false light claims are based upon the August 5, 2009
newspaper article, I grant Defendants' Motion for Summary
Judgment.

During the deposition of plaintiff taken by defendants
on January 31, 2013, counsel for defendants, Anthony T. Bowser,
Esquire, explored the basis for plaintiff's defamation and false
light with her.

---

[134]     Plaintiff's Exhibit P, at page 1.

[Attorney Bowser:]  What exactly to you claim was
falsely asserted about you?

[Plaintiff:]  That I violated the state ethics policy,
that I did anything unethical.

                          *   *   *

[Attorney Bowser:] Who do you believe told people that
you engaged in unethical conduct?

[Plaintiff:]  The people in HR.  I believe Andrea
McCue did.  I believe that there was a lot of gossip
going around from the department heads.

[Attorney Bowser:]  Well, let's see if we can take
this a little slower.  You believe Ms. McCue made a
statement that you engaged in unethical conduct?

[Plaintiff:] Yes.

[Attorney Bowser:] How do you know that?

[Plaintiff:] I said I believe.

[Attorney Bowser:]  Okay.  How did you come to believe
that Ms. McCue made a statement that you engaged in
unethical conduct?

[Plaintiff:]  Because she often said information to
other department heads about things like that.

[Attorney Bowser:]  Okay.  So as we sit here today,
other than an assumption, you have not basis for your
belief that –

[Plaintiff:]  Have I ever seen anyone say anything
about me in front of my face? No.

[Attorney Bowser:]  Have you ever heard Ms. McCue make
such a statement about you?

[Plaintiff:]  Or anyone else, no.[135]

---

[135]     Defendants' Exhibit I, Chan Deposition 1/31/2013 at pages 243-
244.

[Attorney Bowser:]  Okay. Who else do you believe made a statement that you engaged in unethical conduct?

[Plaintiff:]  I believe the commissioners did.

[Attorney Bowser:]  All three of them?

[Plaintiff:]  At least two.

                              *   *   *

[Attorney Bowser:]  Which two?

[Plaintiff:]  Commissioner Stuckey and Commissioner Martin.

[Attorney Bowser:]  Why do you believe that the two of them have made statements that you engaged in unethical conduct?

[Plaintiff:]  Because they would have been the only ones that knew of this suspension or should have known.  The commissioners, [Attorney] Athey, Ms. McCue, and Mr. Douts.  They should have been the only ones that knew.

[Attorney Bowser:]  Okay.

[Plaintiff:]  And if anyone else knew outside of the county, it had to come from one of them.

[Attorney Bowser:]  What precise statement do you believe they made?

[Plaintiff:]  I believe that they, at the very least, implied that I did something wrong.

[Attorney Bowser:]  Okay.  So now it's an implication?

[Plaintiff:]  That I was fired.

[Attorney Bowser:]  Now it's an implication?

[Plaintiff:]  I believe they told other people that I did something wrong and I was fired for good cause.

*  *  *

[Attorney Bowser:]  Well, let's make sure we're clear
here.  Do you believe that either Commissioner Stuckey
or Commissioner Lehman made a statement that you
engaged in unethical conduct?

[Plaintiff:]  Or Ms. McCue or Mr. Douts or any of the
above.

[Attorney Bowser:]  We just went through Ms. McCue, so
let's focus on Mr. Stuckey and Mr. Martin.  What basis
do you have for believing that they made a statement
that you engaged in unethical conduct?

[Plaintiff:]  Because people gave me the cold
shoulder.  Weird looks after that.  People who
normally were very courteous, very sociable with me,
such as President Judge Farina, the President Judge at
the time.  He sat around with Commissioner Stuckey and
Sheriff Bergman, and we all ate lunch together with
the [county] treasurer at the time.  I got the cold
shoulder from the beginning.  It was clear I was no
longer respected.

[Attorney Bowser:]  Okay.  But you don't have any
facts to establish that they actually made a statement
that you engaged in unethical conduct and made those
statements to others?

[Plaintiff:]  Did I hear them say it?  No.

[Attorney Bowser:]  Did you hear from others?  Did
others relate to you that those two individuals made
those statements?

[Plaintiff:]  No.

*  *  *

[Attorney Bowser:]  Okay.  So the only basis you have
for [claiming] that false information about you
engaging in unethical conduct was published is the
fact that people gave you the cold shoulder?

> [Plaintiff:] Yes. And the fact that it was in the front page of the local paper, whereas any other HR director, when they were fired, was not. Mark Henderson was not in the front page of the newspaper.[136]

The above-quoted deposition testimony clarifies that the allegedly "false and misleading statements about the plaintiff" to which Plaintiff's Memorandum refers, and which form the basis for her defamation and false light claims, is the purported statement that plaintiff violated the State Ethics Act, or otherwise engaged in unethical conduct.[137]

However, plaintiff has not produced record evidence that would permit a reasonable juror to find, without simply speculating, that Commissioner Martin, Commissioner Lehman, County Administrator Douts, or Chief Clerk McCue published a statement asserting that plaintiff violated the State Ethics Act or otherwise engaged in unethical conduct.

Plaintiff did not testify, or otherwise demonstrate, that Commissioner Martin, Commissioner Lehman, County Administrator Douts, or Chief Clerk McCue made such a statement in plaintiff's presence. Moreover, plaintiff did not present testimony by deposition or affidavit demonstrating from any

---

[136] Defendants' Exhibit I, Chan Deposition 1/31/2013 at pages 244-247.

[137] See id. at page 242.

other person (such as President Judge Farina, or the treasurer)
who heard Commissioner Martin, Commissioner Lehman, County
Administrator Douts, or Chief Clerk McCue make such a
statement.[138]

Accordingly, I grant Defendants' Motion for Summary
Judgment with respect to the plaintiff's defamation claim in
Count V and false light/invasion of privacy claim in Count VI
against defendants Martin, Lehman, Douts, and McCue.  As
discussed above, plaintiff's claims against defendant Stuckey
are withdrawn.

---

[138]     I note that paragraph 36 of Plaintiff's Counter[-]Statement of
Undisputed Material Facts states, in pertinent part:

> Andrea McCue admitted at her deposition that she published false
> statements to employees accusing the plaintiff of prospective
> vendor influence.  Andrea McCue admitted that she spoke to Angie
> Rivera about the Plaintiff to which Ms. Rivera confirmed....Angie
> Rivera had no right to know as well as other employees that
> Defendant Douts admitted were informed of the plaintiff's
> termination.

Plaintiff's Counter[-]Statement of Undisputed Material Facts at ¶ 36.

Despite the admission purportedly contained in defendant McCue's
deposition testimony, paragraph 36 of Plaintiff's Counter[-]Statement of
Undisputed Material Facts does not provide a citation to the location of that
admission in Ms. McCue's deposition.

Defendants' point out the omission of such a citation in their
Reply Brief.  (Defendants' Reply Brief at page 8 n.5.)

Although defendants incorrectly assert that plaintiff "fails to
offer McCue's deposition transcript", (Defendants' Reply Brief at page 8
n.5.), a review of the portions of Ms. McCue's deposition transcript which
were filed on April 8, 2013 as Plaintiff's Exhibit HH (Document 46-38)
reveals no such admission.

Moreover, page 81 of defendant Douts' deposition transcript,
which plaintiff cites as the source of Mr. Douts' purported admission that he
informed other employees of plaintiff's termination, contains no such
admission.

## Plaintiff's Request for Summary Judgment

In her response to the Motion, plaintiff states that she

> respectfully prays that this Honorable Court grant summary judgment for plaintiff on her claims for equal protection under Section 1983 (Count I), disparate treatment, adverse action, hostile work environment and retaliation in violation of Title VII (Count II), associational discrimination and retaliation in violation of [the] ADA (Count III), and disparate treatment, adverse action, hostile work environment, retaliation and aiding/abetting under [the] PHRA (Count IV).

My Rule 16 Status Conference Order filed January 7, 2013[139] established March 15, 2013 as the deadline for any party (including plaintiff) to file a motion for summary judgment. That deadline was not extended. Plaintiff's Response in Opposition to Summary Judgment was filed April 8, 2013 (24 days after the dispositive-motion deadline).

To the extent that Plaintiff's Response in Opposition can be construed as a motion by plaintiff for summary judgment on her claims in Counts I through IV, that motion is dismissed as untimely.

---

[139]    See Document 41 at page 3.  The dates memorialized in the Rule 16 Status Conference Order were established by agreement of, and communicated to, counsel during a November 14, 2012 status conference conducted by telephone conference call with the undersigned.

## CONCLUSION

Plaintiff's request to withdraw all claims against defendant Dennis Stuckey is granted and those claims are dismissed with prejudice from the Second Amended Complaint.

Plaintiff's request to dismiss her equal protection and employment discrimination claims against defendant Andrea McCue in Counts I and IV is deemed to be a request to amend the Second Amended Complaint for the purpose of withdrawing those claims; and the Second Amended Complaint is deemed amended to eliminate those claims, with prejudice, without further pleading.

For the reasons expressed in this Opinion, I grant, in part, and deny, in part, the remaining claims addressed in Defendants' Motion for Summary Judgment, as follows.

Defendants' Motion for Summary Judgment is granted to the extent that it seeks summary judgment in favor of defendants with respect to plaintiff's claims of hostile work environment under Title VII and the Pennsylvania Human Relations Act, associational discrimination and retaliation under the Americans with Disabilities Act, and for defamation and false light/invasion of privacy under Pennsylvania law because plaintiff has not produced record evidence which would permit a reasonable juror to find in her favor on those claims.

However, Defendants' Motion for Summary Judgment is
denied to the extent it seeks summary judgment in favor of
defendants and against plaintiff on plaintiff's equal protection
race and national origin discrimination claim under section 1983
in Count I because plaintiff produced record evidence which
would allow a reasonable juror to conclude the she was treated
more harshly than similarly-situated non-Asian, non-Taiwanese
management-level county employees.

Further, Defendants' Motion for Summary Judgment is
denied to the extent it seeks summary judgment in favor of
defendants on plaintiff's Title VII disparate treatment race and
national origin discrimination claim against defendant County of
Lancaster, and on plaintiff's parallel PHRA claim against
defendant County of Lancaster and defendants Martin, Lehman, and
Douts.

Similarly, Defendants' Motion for Summary Judgment is
denied to the extent that it seeks summary judgment in favor of
defendants on plaintiff's retaliation claim against the County
under Title VII in Count II, and against defendants Martin,
Lehman, and Douts under the PHRA in Count IV.

Accordingly, the claims which remain in plaintiff's
Second Amended Complaint for disposition following entry of the
within Opinion and accompanying Order are as follows:

plaintiff's section 1983 equal protection claim in Count I against the County and defendant Martin, Lehman, and Douts; plaintiff's disparate treatment race and national origin discrimination claim against the County (in Count II and Count IV) and defendants Martin, Lehman, and Douts (in Count IV); plaintiff's retaliation claim against the County (in Count II and Count IV) and against defendants Martin, Lehman, and Douts (in Count IV).